GEORGE L. CLARK, Appellant, v. J. P. McBAINE
et al.

Division One, June 8, 1923.

1. **LIBEL: Publication as a Whole.** In construing an alleged libelous publication, courts take it as a whole and determine its meaning and effect from its entire contents, in the light of the occasion, the surrounding circumstances and the apparent object of the writer.

2. ————: **Defamatory Statements: Dismissal of Teacher.** A written statement made by members of the faculty of law of the State University that the plaintiff, "lately a professor of law in the University of Missouri School of Law, but who was dismissed recently from this position, is claiming publicly throughout the State and elsewhere that his dismissal by the board of curators was improper and unjust" and that "we desire to state that in

our opinion there were good and sufficient grounds for his dismissal" and "it is our belief, based on facts known to us," that plaintiff, "at the time this action was taken by the board of curators, had ceased to be a useful member of the faculty, and was not fitted to continue his association with the School of Law," being published, was defamatory and libelous, because it tended to injure plaintiff in his vocation as a teacher and as an author of textbooks on the law.

3. ———: ———: **Justified Protection of Defendant's Interests.** Plaintiff having caused to be published in a paper of wide circulation that he had intended to charge the president of the University of Missouri with having lost the confidence of its faculty and had become a serious obligation to the university, and that on that account he had undertaken to ascertain how general and acute was the dissatisfaction among the faculty with the president, with the view of compelling his resignation, a publication by members of the faculty of the School of Law, of which plaintiff had been a member and which was a department of the university and under the president's supervision, that the grounds for plaintiff's dismissal by the board of curators "were good and sufficient" and that it was their belief, based on facts known to them, that the plaintiff, at the time he was dismissed, "had ceased to be a useful member of the faculty, and was not fitted to continue his association with the School of Law," was justified and necessary for the protection of their interests. The defendants, being members of the faculty of the School of Law, were personally and directly interested in the charges made by plaintiff against the president, out of which his dismissal culminated, and the public had a right to expect that they would not remain passive in view of the widely-published claim of plaintiff that his dismissal was improper and unjust.

4. ———: ———: **State Institution: Qualified Privilege.** The School of Law is a department of the University of Missouri, which is an institution established by law and maintained by legislative acts, and is therefore a subject of comment through the public press; and the acts of its president, the action of its board of curators in dismissing a member of the faculty of the School of Law, and charges preferred by him against the president, especially charges that he had lost the confidence of the faculty, are all matters of public interest; and a statement by other members of the law faculty, impliedly invited by his said charges, to the effect that his dismissal was not improper and that he had "ceased to be a useful member of the faculty" and was "not fitted to continue his association with the School of Law," was qualifiedly-privileged comment.

5. ———: Dismissal of Teacher: Attempted Reinstatement: Privileged Comment. A member of the faculty of the School of Law of the University of Missouri having been dismissed by the board of curators and seeking to be reinstated, his fitness and qualifications for the position were subjects for public comment; and published statements by other associate numbers of the faculty that, in their opinion, "there were good and sufficient grounds for his dismissal" and that, in their belief, based on facts known to them, he "had ceased to be a useful member of the faculty" and "was not fitted to continue his associations with the School of Law," were privileged comments.

6. ———: Comments After Dismissal: Privileged Occasion. Plaintiff had been dismissed as a member of the faculty of the School of Law of the University of Missouri, and thereafter had published articles in newspapers of wide circulation that the president had lost the confidence of the faculty and had become a serious obligation to the university. Thereafter he made application for reinstatement, and while this application was pending defendants, other members of the faculty of the School of Law, published an article in which they declared their belief that he was "not fitted to continue his associations" with the school. His means of livelihood was his profession and his income from textbooks on the law written by him, and he charges that his damages are due to injury to him as a professor of law and as an author. *Held*, that it cannot be held that there was no longer a privileged occasion for the statement made by defendants.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis, Judge.*

Affirmed.

*Ralph T. Finley* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

(1) In construing an alleged libelous publication, the court should take the article as a whole and determine its meaning and effect from its entire contents and from the occasion, surrounding circumstances, and the apparent object of the writer. St. James Military Academy v. Gaiser, 125 Mo. 526; Julian v. Kansas City Star, 209 Mo. 76; 25 Cyc. 357. (2) The alleged statement, signed by members of the law

faculty and published by the president of the University, was defamatory because it tended to injure the plaintiff in his vocation as a teacher. · 17 R. C. L. 305; 25 Cyc. 336; 18 Am. & Eng. Ency. Law, 964; Spears v. McCoy, 115 Ky. 1; Dixon v. Allen, 69 Cal. 527; Lindley v. Horton, 27 Conn. 58; Henry v. Moberly, 6 Ind. App. 490.   (3) The fact that the statement is expressed in the form of an opinion does not prevent it from being defamatory, because the statement of an opinion necessarily implies a statement that there are facts justifying the opinion, and indeed, the statement in question expressly states that there were facts known to the faculty, which facts are withheld from the public.  18 Am. & Eng. Ency. Law, 971; McGowan v. Menifee, 7 T. B. Mon. (Ky.) 314, 18 Am. Dec. 178; Simmons v. Holster, 13 Minn. 249; Miller v. Miller, 8 Johns. (N. Y.) 74; Logan v. Steele, 1 Bibb. (Ky.) 593, 4 Am. Dec. 659; 25 Cyc. 360.   (4) The alleged statement was not privileged because there was no· privileged occasion; in order that there be a privileged occasion, there must be some legitimate interest to be protected, either· of the maker, or recipient, or of the public. 18 Am. & Eng. Ency. Law, 1029; Henry v. Moberly, 6 Ind. App. 490; 25 Cyc. 388.   (5) Even if there had been a privileged occasion, the express withholding of the facts upon which the alleged opinion was based would forfeit the privilege. Furthermore, malice and falsity are alleged in the petition, which if sustained, would forfeit the privilege.  The plaintiff was entitled to have his evidence of malice and falsity of the statements submitted to the jury.  18 Am. & Eng. Ency. Law, 1012; Manby v. Witt, 18 C. B. 544, 546; St. James Military Academy v. Gaiser, 125 Mo. 527; McClung v. Pulitzer Pub. Co., 214 S. W. 202; Callahan v. Ingram, 122 Mo. 365.   (6) The al· leged statement cannot be excused as fair comment, because comment must be based upon either acknowledged or proved facts, so that the public may judge for itself whether the comment is fair.   In the case at bar, the facts upon which the supposed comment is based are expressly withheld by the signers of the statement, and

there is in fact no comment at all. 18 Am. & Eng. Ency. Law, 1021; Christie v. Robertson, 10 N. S. W. 157; Broadbent v. Small, 2 Vict. L. Rep. 121; Belknap v. Bell, 83 Mich. 583; Merivale v. Carson, L. R. 20 Q. B. Div. 275; Pattison v. Gulf Bag Co., 116 La. 963. By the great weight of authority, the privilege of fair comment never includes the privilege of making false statements. 18 Am. & Eng. Ency Law, 1041; Davis v. Shepstone, 11 App. Cas. 187; Burt v. Advertiser Co., 154 Mass. 512; Hays v. Clinton Printing Co., 169 Mass. 512. In Missouri the majority doctrine has been repeatedly affirmed. Walsh v. Publishing Co., 250 Mo. 142; Diener v. Publishing Co., 230 Mo. 613; Hagner v. Publishing Co., 172 Mo. App. 436; McClung v. Publishing Co., 279 Mo. 370; Smith v. Burrus, 106 Mo. App. 102, 106. In a minority of jurisdictions there has been a relaxation of this rule where candidates for office are commented upon by the voters, but apparently this so-called liberal rule has never been extended further than to such persons. 18 Am. & Eng. Ency. Law, 1042; Coleman v. Maclennan, 78 Kan. 711; Briggs v. Garrett, 111 Pa. St. 404. (7) The alleged statement cannot be excused on the ground of mutual recrimination or consent of the plaintiff, because the plaintiff's prior statements were not defamatory of anyone; and since the privilege of mutual recrimination is analogous to the privilege of self-defense from an assault, it does not arise until the defendant himself has been defamed and extends only to statements made in good faith as an answer thereto. Fish v. Publishing Co., 102 Mo. App. 6, 22; Myers v. Kaichen, 75 Mich. 272; Brewer v. Chase, 121 Mich. 526; 25 Cyc. 391. (8) Even if the language used is ambiguous and doubtful, it is for the jury to say in what sense it was used and in what sense the readers understood it. McGinnis v. Knapp & Co., 109 Mo. 141; Caruth v. Richeson, 96 Mo. 186; Julian v. Kansas City Star, 209 Mo. 78; Ukman v. Daily Record Co., 189 Mo. 394; Peak v. Taubman, 251 Mo. 414.

*Boyle Gordon Clark* and *Guthrie & Conrad* for respondents.

(1) A demurrer lies to a petition sounding in tort for libel the same as in other actions, and it is for the court to determine by judicial construction the legal effect and force of the terms of the written instrument of which complaint is made, provided those terms are unambiguous and are set forth in the petition as the foundation of the cause of action. Diener v. Chronicle Publishing Co., 230 Mo. 620; Walsh v. Publishing Company, 250 Mo. 149; Donovan v. Boeck, 217 Mo. 70. (2) The statement of which complaint is made, together with the preferatory allegations by way of inducement, is not ambiguous and does not constitute libel. The facts and circumstances constitute the preferatory allegations by way of inducement in plaintiff's petition, and when the statement complained of be considered in the light thereof it is unambiguous and does not constitute libel. Cook v. Publishing Company, 241 Mo. 326, 344; O'Connor v. Sill, 60 Mich. 175; Newell on Slander and Libel (3 Ed.) p. 735; Walsh v. Pulitzer Publishnig Co., 250 Mo. 142; Branch v. Knapp & Co., 222 Mo. 580, 605; Cobb v. Tinsley, 243 S. W. 1009. (3) The statement of which plaintiff complains is privileged fair comment for the following reasons: (a) It was a communication justified and necessary to protect the defendants' interests; (b) As a comment upon a matter of public interest; (c) As a discussion of the fitness and qualifications of plaintiff to hold the position of teacher in the law faculty of the University of Missouri. (a) It was a communication justified and necessary to protect the defendants' interests. An examination of plaintiff's petition shows that the plaintiff in his interview in the St. Louis Post-Dispatch charged the president of the University in effect with having lost the confidence of the faculty of the University and of having become a serious obligation to the University. That he, plaintiff, undertook to determine how widespread and acute the obligation of the president of the University was with the ultimate end of forcing his resignation. The president of the Uni-

versity was head of the law faculty and the charge of
the plaintiff indicated lack of harmony in the faculty of
the law school, and therefore the law school and the law
faculty were personally and directly interested and the
public had a right to expect in view of the positions held
by the defendants that they would not remain passive on
the issues in controversy initiated by plaintiff through
the press. Fish v. St. Louis County Printing & Pub. Co.,
102 Mo. App. 6; Newel on Slander & Libel (3 Ed.) pp.
614, 625; Clink v. Colby, 46 N. Y. 427; Chaffin v. Lynch,
83 Va. 106; White v. Nichols, 3 How. 266; Bigman v.
Van Benthuysen, 36 La. Ann. 38; O'Connor v. Sill, 60
Mich. 175.    (b) The School of Law is a department of
the State University, which is a state institution estab-
lished by the Legislature, governed in accordance with
legislative provisions, supported by public taxation.
Arts. 18, 22 and 23, Chap. 102, R. S. 1919; Art. 11, secs.
5 and 6, Mo. Constitution.   This acts of the president of
the State University, the action of the Board of Curators
in discharging the plaintiff, the charges made by the
plaintiff against the president of the University, par-
ticularly the charge that the president of the University
had lost the confidence of the faculty of the school and
the statement of the defendants upon the subject-matter
of such controversy initiated by plaintiff through the
press, answer to which was impliedly invited, were of
public interest and comments thereon were qualifiedly
privileged.   Diener v. Chronicle Publ. Co., 230 Mo. 630;
Atkinson v. Detroit Free Press Co., 46 Mich. 341; Mc-
Clung v. Pulitzer Pub. Co., 279 Mo. 370; Townsend or
Slander & Libel (4 Ed.) sec. 258; Cooley on Constitu-
tional Limitations, ch. 12, p. 645; Odgers on Libel &
Slander, p. 248; Cook v. Publishing Co., 241 Mo. 360;
Sweeney v. Baker, 13 W. Va. 158; Callahan v. Ingram,
122 Mo. 365.   (c) Plaintiff having sought to be rein-
stated a teacher in the law faculty of the University of
Missouri—a public position of great responsibility and
of manifest interest to the people generally of the State—
his fitness and qualifications for that position were sub-
jects for public comment, and as such were privileged.

Walsh v. Pulitzer Publ. Co., 250 Mo. 142; Sweeney v. Baker, 13 W. Va. 158. (4) The statement of the faculty of the law school of the University of Missouri complained of does not touch the plaintiff in his relation to the faculty and the law school of the University of Missouri, because at the time of the publication of the article the plaintiff no longer sustained any relation of professor with either the faculty or the School of Law. He theretofore had been dismissed as such law professor, and therefore, the article could not have touched him in that special manner. Baldwin v. Walser, 41 Mo. App. 243; Spurlock v. Lombard Inv. Co., 59 Mo. App. 225; Legg v. Dunlevy, 10 Mo. App. 461; Newell on Slander & Libel (3 Ed.) sec. 180; Pollard v. Lyon, 91 U. S. 225.

WOODSON, J.—The plaintiff instituted this suit in the Circuit Court of Saline County against the defendants to recover $50,000 damages, $25,000 actual, and $25,000 punitive damages, for the publication against him of a certain libelous article set out in the petition and made the basis of this suit.

To the petition filed by the plaintiff, the defendants filed a general demurrer, stating that petition did not state facts sufficient to constitute a cause of action against them. The demurrer coming on thereafter for hearing, was by the court taken up and considered, and by the court sustained. Upon the plaintiff declining to plead further, the court rendered judgment therein for the defendants. After moving unsuccessfully for a new trial, the plaintiff in due time and proper form appealed the cause to this court.

The second amended petition filed in the cause was as follows:

"Now comes the plaintiff, by leave of court first had and obtained, and for his second amended petition states that he is a graduate of Kenyon College, Indiana University Law School, and of the Harvard Law School, and is a duly licensed attorney at law; that since his graduation he has been engaged in teaching law in various law schools and universities of the United States, and has

made that his profession and vocation; that in connection with and as an aid to his said work of teaching, he has also been engaged in writing law books, and that since September 1, 1913, he has been employed by the University of Missouri as a professor of law, in the School of Law of the University of Missouri; that the Board of Curators, being the governing body of the University of Missouri, has power to dispense with the services of any professor in the University, with or without cause, at any time; that on or about November 24, 1920, the Board of Curators of said University dispensed with plaintiff's services as a professor in said law school after December 21, 1920, and that at said time gave him notice that on the expiration of his annual contract, on September 1, 1921, his connection with said University would cease.

"The plaintiff further states that said action of said Board of Curators did not deprive the plaintiff of his salary as such professor of law prior to September 1, 1921, and the action of said board was taken without notice to him and not at his request, and that shortly thereafter, to-wit, on or about January 23, 1921, there was published in the St. Louis Post-Dispatch, a daily newspaper of wide circulation in the State of Missouri and elsewhere, an article in which was quoted a statement or letter, written by plaintiff, dated December ?, 1920, addressed to H. V. Tyler, secretary of the American Association of University Professors at Cambridge, Massachusetts, in which letter he stated that in connection with the said action of the Board of Curators no charges had been made against his character or against his efficiency and competency as a teacher of law, and that the failure to make any such charges as a basis for said board's action was an implied admission that no such grounds existed as a basis for the action taken by said board, and that on or about January 24, 1921, said article, including said letter of plaintiff, was copied and published in the Columbia Daily Tribune, a newspaper of general circulation in the city of Columbia, Missouri, as well as in other papers in the State of Missouri.

"The plaintiff further states that said article so published in the St. Louis Post-Dispatch, as aforesaid, is as follows:

" 'Prof. Clark Tells of His Dismissal from
·University

" 'Instructor in Law Announces He Has Asked Board of Curators of M. S. U. to Reconsider Action.

" 'Replies to Charges Contained in Letter.

" 'Denies Disloyalty to Institution and Recounts Circumstances He Thinks Led Up to Present Situation.

" 'Prof. George Luther Clark of Columbia, Mo., yesterday made it known for publication that he was summarily dismissed from service as a law professor of the Missouri State University at Columbia, November 29, last, and that he had decided to ask the Board of Curators to reconsider his dismissal. One charge was that he was disloyal to Dr. A. Ross Hill, president of the University.

" 'Prof. Clark's salary as a professor of law is $3,600 a year. Under the terms of his employment he will draw his salary until next September, but the dismissal to take effect at that time was supplemented by a suspension, so that he is not now permitted to teach at the University.

" 'Shows Copy of Letter.

" 'He gave out this copy of a letter which he mailed to the Board of Curators last Friday afternoon:

" ' "I acknowledge receipt of your letter of Nov. 29, 1920, informing me that I had been dismissed from my professorship for (1) disloyalty to the president of the University; (2) lack of confidence by students in my fairness; (3) declining usefulness as a professor to the University. The order upon which your letter was based is a public record by R. S. Mo. '19, sec. 11544.

" ' "I now remind you that I have had no opportunity to defend myself before you, or any other tribunal, from the charges in your letter. I also remind you

that it is contrary to the custom of American universities to discharge a professor, for causes alleged, without a hearing.

" ' "Please regard this letter as a deliberate and sincere denial (1), that prior to Nov. 29, I was disloyal to the president in the sense that I was disloyal to the University; (2) that before Nov. 29 I was unfair as a professor or that any considerable number of students deemed me unfair; (3) that before Nov. 29 my usefulness to the University had declined.

" ' "In view of all the foregoing, I request that you rescind the order of dismissal referred to in your letter of Nov. 29, and that you either, (1) reinstate me as a professor of law, or else, (2) substitute for the rescinded order another order having the effect of a temporary suspension, together with a specification of charges similar to those in your letter of Nov. 29, and the designation of a convenient time for a hearing on those charges.

" ' "I submit herewith a letter from Prof. Tyrrell Williams of St. Louis which I offer as an inducing argument in support of this request of mine."

" 'Prof. Williams, referred to in the letter, is the acting dean of the law department of Washington University. It was on a letter of advice written by him as a friend that Prof. Clark decided to ask that the curators give him a hearing.

" 'Tells Version of Causes.

" 'Since his dismissal Prof. Clark has received letters from many former members of the University Faculty. In writing to Prof. H. V. Tyler, secretary of the American Association of University Professors and member of the faculty of the Massachusetts Institute of Technology, Prof. Clark gave his version of the causes leading to his dismissal. He wrote:

" ' "You will notice that the chief reason assigned for my summary dismissal is, 'active and persistent disloyalty to the president.' There are only two matters which could by the widest stretch of language be called disloyalty to the president, and both of them were—1 still firmly believe—actuated by the most thoroughgoing

loyalty to the University. In June, 1919, while I was on a short trip East, a letter reached me at Cambridge, Mass., from the secretary of the Board of Curators, asking me my opinion of President Hill, stating that there was an investigation, and anything that I wrote would be confidential. I thereupon, considering it was my duty under the circumstances to give my honest opinion, did so. In spite of the assurance to me from the board that the letter would be kept in strict confidence, President Hill saw the letter, and it is, I understand, one of the causes of my dismissal.

" ' " The other incident happened this last June. A group of the faculty, including myself, feeling that President Hill had so lost the confidence of his faculty that he had become a serious obligation to the University, decided to attempt to find out how serious the dissatisfaction was, expecting if we found it to be widespread and acute, to try to bring about his resignation. Before the investigation had proceeded very far we were induced by other members of the faculty to agree to an arrangement whereby a committee of ten members of the faculty should go to the president and seek to persuade him to adopt a different attitude towards the faculty. This committee did wait upon the president, told him of the dissatisfaction, and he agreed to a policy of reform. With that we all acquiesced and supposed the incident closed.

" ' " In regard to the charge of 'the lack of confidence on the part of students in your fairness' it is not only trivial, but has no foundation in fact. In the seven and one-half years that I have taught here only one student has, so far as I know, made any such complaint, and that was nearly seven years ago. The failure to make any other charge—either against my character or efficiency—is, of course, an implied admission that no such ground exists. In fact, up till about two years ago, when I apparently offended President Hill by opposing a three-term calendar for the University, he had spoken in the most complimentary terms of me to the Board of Curators and others.

" ' "In view of the above circumstances, I respectfully ask that an investigation be made by the A. A. U. P.; I hope it can be done promptly."

" 'Says Curators Took Action.

" 'President Hill of Missouri University, when asked over the long-distance telephone for a statement as to Prof. Clark's dismissal, said:

" ' "I have nothing to say at this time except that Prof. Clark was dismissed on an order of the Board of Curators at the request of the president and the dean of the University." '

"The plaintiff further states that thereafter, on or about January 31, 1921, the defendants, in response to said article, and particularly with the view of denying said statements made by the plaintiff in the published letter or statement aforesaid, and to cause the public to disbelieve plaintiff's said statements, and in response to said statement of the plaintiff, willfully and maliciously published and caused to be published, of and concerning the plaintiff, in newspapers hereinafter mentioned, published and circulated in the city of Columbia and elsewhere, the following false, malicious and defamatory statement, to-wit:

" 'It has come to our attention that Dr. George L. Clark (meaning the plaintiff), lately a professor of law in the University of Missouri School of Law, but who was dismissed recently from this position, is claiming publicly throughout the State and elsewhere that his dismissal by the Board of Curators was improper and unjust. We (meaning the defendants), of the faculty of law of the University of Missouri, desire to state that in our opinion there was good and sufficient grounds for his dismissal. It is also our belief, based on facts known to us, that Dr. Clark (meaning the plaintiff), at the time that this action was taken by the Board of Curators, had ceased to be a useful member of the faculty, and in our opinion was not fitted to continue his associations with the School of Law (meaning the School of Law of the University of Missouri).

" 'J. P. McBaine,
" 'J. L. Parks,
" 'Kenneth C. Sears,
" 'Stanley H. Udy.'

"The plaintiff further states that by the signing and publication of said statement the defendants wrongfully and maliciously charged, and intended to charge, and were so understood by the public as charging, that the plaintiff had been dismissed by the Board of Curators at the University of Missouri because charges had been made against him of such nature as would seriously reflect upon his character as a man and his efficiency as a teacher, and that such charges were found to be true and the said action of said board was based upon the truth of said charges, and further, that the plaintiff was an unfit person to occupy the position of professor of law in said School of Law, and that he was incompetent and unfit to occupy the position as professor of law in said law school; that by said false and malicious statement published as aforesaid by defendant, and particularly the clause: 'It is also our belief, based upon facts known to us, that Dr. Clark at the time that this action was taken by the Board of Curators had ceased to be a useful member of the faculty, and in our opinion was not fitted to continue his associations with the School of Law,' the defendants meant and intended to charge and were so understood by the public as charging, not only that the plaintiff had become incompetent as a teacher of law, but said charge is and was intended to be a veiled insinuation or charge of some wrongdoing within the knowledge of the defendants reflecting upon his competency and character, which would unfit him socially and morally as a teacher of law, and to associate with the faculty and the students of a law school.

"The plaintiff further states that said statement of the defendants was published as aforesaid in the Columbia Daily Tribune and the Columbia Evening Missourian, daily newspapers published and circulated in the city of Columbia and elsewhere; that said Columbia Evening Missourian, in addition to its circulation in the city of

Columbia, Missouri, had and has a wide circulation among university and college circles throughout the country; that the defendants have also caused and permitted copies of said statement to be sent privately to divers persons in the United States; that by the publication of said false and defamatory statement by the defendants concerning him, the plaintiff has been exposed to public contempt and ridicule, and has been deprived of the benefits of public confidence and social intercourse; and that the publication of said false and defamatory statement, as aforesaid, has greatly injured the plaintiff in his good name and reputation, and on account thereof he has suffered great mortification, humiliation and shame.

"The plaintiff further states that he has been engaged in teaching law for many years in colleges and universities of the United States, and during that time has written and published a number of legal textbooks; that he has depended upon his profession as a teacher of law and as an author for his livelihood; that the alleged statements and insinuations in said published statement of the defendants are and were false; that said defendants in truth and in fact knew of no facts, and no facts existed, and none now exist, justifying the alleged beliefs and opinions set forth in said statement by defendants, and that the same was published by the defendants for the wrongful and malicious purpose of injuring the plaintiff in his profession and as an author, to his irreparable injury and damage as such teacher and author.

"The plaintiff further states that on account of the aforesaid false and malicious publication as aforesaid, he has suffered actual damages in the sum of twenty-five thousand dollars, and because of the willful and malicious publication thereof by defendants, plaintiff has been damaged in the further sum of twenty-five thousand dollars punitive damages.

"Wherefore, the plaintiff prays judgment against the defendants for the sum of twenty-five thousand dollars actual damages and for the further sum of twenty-

five thousand punitive damages, and for his costs about his suit in this behalf expended.''

I.   It is first insisted by counsel for appellant that in construing an alleged libelous publication, the court should take the article as a whole and deter-**Entire Publication.** mine its meaning and effect from its entire contents, from the occasion, surrounding circumstances, and the apparent object of the writer  This contention is clearly supported by the cases. [St. James Academy v. Gaiser, 125 Mo. 517, l. c. 526-7; Julian v. Kansas City Star Co., 209 Mo. 35, l. c. 76-9 and cases cited.]

II.   It is next insisted by counsel for appellant that the statement signed by the members of the law faculty was defamatory and libelous because it tended **Libelous Publication.** to injure the plaintiff in his vocation as a teacher and author.   There seems to be a concurrence of the authorities that this insistence is well taken.   [18 Am. & Eng. Ency. Law, 964, note c; Elam v. Badger, 23 Ill. 498; Bray v. Callihan, 155 Mo. 43; Courtney v. Blackwell, 150 Mo. 245; Spears v. Mc-Coy, 155 Ky. 1; Dixon v. Allen, 69 Cal. 527; Lindley v. Horton, 27 Conn. 58; Henry v. Moberly, 6 Ind. App. 490; 25 Cyc. 336.]

III.   A more serious question is presented by the first insistence by counsel for respondents, namely: that the statement of which plaintiff complains is **Necessary Protection of Interests.** privileged fair comment for the following reasons:

(1)   It was a communication justified and necessary to protect the defendant's interests; (2)   As a comment upon a matter of public interest; (3)   As a discussion of the fitness and qualifications of the plaintiff to hold the position of teacher in the law faculty of the University of Missouri.

Regarding the first contention: If we read the petition in the light of all the facts and circumstances, the occasion and purpose the plaintiff had in view when he interviewed the St. Louis Post-Dispatch regarding this matter, it is perfectly clear that he intended to charge Prof. Hill of the University in effect with having lost the confidence of the faculty of the University and charged that he had become a liability, that is, a detriment instead of a benefit to the University. On that account the appellant undertook to ascertain how general and acute the disaffection of the president of the University was with the faculty, with the final end in view of compelling his resignation as president of the University. The president of the University was the head of the law faculty of the law department, and therefore the law school and the law faculty were personally and directly interested in the matter and the public had a right to expect, in view of the relative positions occupied by them, that they would not remain passive on the questions in controversy presented by the appellant through the press.

These views are firmly anchored upon the following authorities: Fish v. St. Louis Co. Printing Co., 102 Mo. App. 6; Newel on Slander & Libel (3 Ed.) pp. 614, 625; Klinck v. Colby, 46 N. Y. 427; Chaffin v. Lynch, 83 Va. 106; White v. Nichols, 3 How., 266; Bigney v. Van Benthuysen, 36 La. Ann. 38; O'Connor v. Still, 60 Mich. 175.

IV. The School of Law is a department of the University of Missouri which is an institution established by law and governed in accordance with legislative enactments, and supported by taxation. [Arts. 18, 22 and 23, Chap. 102, R. S. 1919; Art. 11, secs. 5, 6, Mo. Constitution.] That institution and its various departments therefore become the proper and legitimate subjects of comment through the public press of the State.

Qualified Privilege.

The acts and conduct of the president of the University of the State of Missouri, the action of the Board

of Curators in discharging the appellant, the charges preferred by the appellant against the president of the University, especially the charge that the president had lost the confidence, if not the respect, of the faculty of the school, and the statement of the respondents upon the subject-matter of the controversy initiated by appellant through the press, answer to which was impliedly invited, were of public interest, and comments thereon were qualifiedly privileged. [Diener v. Chronicle Pub. Co., 230 Mo. l. c. 630; Atkinson v. Detroit Free Press Co., 46 Mich. 341; McClung v. Pulitzer Pub. Co., 279 Mo. 370; Townsend on Slander & Libel (4 Ed.) sec. 258; Cooley, Cons. Limitations, Ch. 12, p. 645; Odgers on Libel & Slander, p. 248; Cook v. Pub. Co., 241 Mo. l. c. 360; Sweeney v. Baker, 13 W. Va. 158; Callahan v. Ingram, 122 Mo. 365.] .

V. The appellant having sought to be reinstated as a teacher in the law faculty in the University, a public position of great responsibility and obvious interest to citizens generally of the State, his fitness and qualifications for that position were subjects for public comment, and the comments as such were privileged. [Walsh v. Pulitzer Pub. Co., 250 Mo. 142; Sweeney v. Baker, 13 W. Va. 158.]

Reinstatement: Privileged Comment.

VI. It is finally insisted by counsel for the respondents that the statement of the faculty of the law school of the University complained of, does not touch the appellant in his relation to the faculty and the law school, because at the time of the publication of the article the appellant no longer sustained the relation of professor with either the faculty or the law school of the University.

Relationship to Faculty.

In our opinion this insistence is untenable. Counsel take too narrow a view of the case. Appellant had been removed as a member of the faculty, and as a teacher of law in the legal department of the University and his application for reinstatement as such was then pend-

ing and undisposed of. Besides, his profession, or means of a livelihood, was still that of a professor of law, and a writer of textbooks upon the law, and the gist of his damages complained of injury done to his standing as a professor and writer of law. This insistence is decided against respondents.

Finding no error in the record the judgment is affirmed. All concur; *Ragland, J.,* in the result.