JAMES W. GALLMAN *v.* CHARLES N. CARNES, ET AL, AND ARKANSAS GAZETTE COMPANY, A CORPORATION

73-28                                    497 S.W. 2d 47

Opinion delivered July 16, 1973

*Watson & Carter,* for appellant.

*Rose, Barron, Nash, Williamson, Carroll & Clay; Putman, Davis & Bassett;* and *Cockrell, Laser, McGehee, Sharp & Boswell,* for appellees.

FRANK HOLT, Justice. This is an appeal from a summary judgment rendered against appellant who brought suit against the individual appellees and the appellee, Arkansas Gazette, for libel. In March, 1972, the Gazette came into possession of certain documents allegedly prepared or caused to be prepared by the six individual appellees who were tenured members of the faculty of the School of Law of the University of Arkansas at Fayetteville. Appel-

lant was a member of the same faculty and, also, assistant dean. Soon after the Gazette received the documents, using them as a basis, it published a news article which allegedly fashioned a direct attack on appellant's qualifications as a professor and scholar of law. The article, also, stressed "strong student dissatisfaction with his lack of teaching competence."

Appellant brought this action in Pulaski County against the individual appellees, all residents of Washington County, seeking $100,000 in actual and $100,000 in punitive damages; and against the individual appellees and the Arkansas Gazette, a Pulaski County newspaper, jointly and severally, seeking actual damages of $1,000,000 and punitive damages in the amount of $1,000,000.

Appellant alleged that the individual appellees published or caused to be published to certain individuals a libelous, malicious and false written statement regarding his qualifications as a teacher and scholar; that said publication was false and defamatory and made maliciously and with knowledge of its falsity resulting in great injury to his professional reputation and activities. Appellant, also, alleged that the Arkansas Gazette published in its newspaper a false and defamatory statement which was made maliciously and with knowledge of its falsity and with reckless disregard for the truth; that the Gazette failed to investigate the truth of the facts published as to appellant; failed to make any reasonable inquiry and was grossly negligent in such failure to inquire into the truth of the facts so published concerning appellant; that a proper or reasonable inquiry would have disclosed the falsity of the publication; that the article was printed, published and distributed by the Gazette with such reckless disregard and carelessness regarding the truth or falsity as to indicate an utter disregard of appellant's rights and the consequences, thereby maliciously, negligently and inexcusably causing appellant substantial and great injury and damage to him as an individual and his professional reputation and activities; that the individual appellees directly caused the publication in the Gazette and indirectly by their indiscriminate publication of their libelous, malicious and false written statement.

The individual appellees responded by a motion to quash service asserting they were not proper joint defendants and, therefore, the service upon them was invalid since proper venue of the asserted action would be in the county of their individual residences where the only service of process was had upon them.

The Gazette answered admitting it had come into possession of a copy of two reports authored by members of the University of Arkansas Law School Committee on Faculty Tenure and Promotion; that the two reports concerned a matter of public and general interest which is the School of Law at the University of Arkansas, a tax supported institution; that the reports made references to certain public officials which included appellant, a faculty member. The Gazette admitted publishing the news story but asserted that the story contained a fair and accurate abridgment of the contents of the Law School Committee reports which were directly quoted and that the publication was privileged. It, also, responded that it was not chargeable with actual malice and that an award for damages would violate its rights under the First and Fourteenth Amendments to the Constitution of the United States. Subsequently, the Gazette moved for a summary judgment. The motion was submitted upon the pleadings, affidavits and depositions of witnesses and the arguments of counsel. The trial court found, after viewing the evidence most favorably to appellant, and with all doubts and inferences being resolved against the Gazette, that there was no genuine issue of material fact in the case. Accordingly, the motion was granted. Also, the individual appellees' motion to quash service of summons upon them was then granted inasmuch as they are residents of Washington County and, therefore, Pulaski County is an improper venue for trial of the issues existing between the remaining parties.

For reversal, appellant contends that since a summary judgment is proper only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law and the court erred because such a fact issue existed. Of course, "it is familiar law that such a judgment is an extreme remedy, that the bur-

den is upon the moving party to show that there is no genuine issue of fact, and that the evidence submitted upon the motion must be viewed most favorably to the party resisting motion." *Quillen, Admn'x* v. *Twin City Bank,* 253 Ark. 169, 485 S.W. 2d 181 (1972). In the case at bar, however, we are of the view that the Gazette met its burden of showing the absence of a genuine issue of fact.

In *New York Times* v. *Sullivan,* 376 U.S. 254, 84 S. Co. 710, 11 L. Ed. 2d 686 (1964), the extent of freedom of expression concerning subjects of public interest, as guaranteed by our Federal First Amendment, was considered. The rule was established which "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Further, in *St. Amant* v. *Thompson,* 390 U. S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), the reckless aspect of actual malice was amplified.

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. **** Failure to investigate does not in itself establish bad faith."

And more recently, *Rosenbloom* v. *Metromedia, Inc.,* 403 U.S. 29, 91 S. Ct. 1811, 29 L. Ed. 2d 296 (1971), extended the "constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." Also, "a libel action **** relating to **** involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." In *Sanders* v. *Harris,* 192 S.E. 2d 754 (1972), the Virginia Supreme Court, citing

*Times* and *Rosenbloom,* upheld a summary judgment in recognizing that a faculty dispute at a state college constituted a subject of public and general concern. The Missouri Supreme Court has held that a faculty dispute as to a professor's qualifications was a proper subject "for public comment and as such was privileged." *Clark* v. *McBaine,* 299 Mo. 77, 252 S.W. 428 (1923).

In the case at bar, we have no hesitancy in holding that appellant, as assistant dean and professor in our University Law School, is a "public official" under the *New York Times, supra,* standard and subsequent federal decisions. Furthermore, we must hold that communications relating to appellant's qualifications as a scholar and professor of law involve "matters of public or general concern" to which the First Amendment constitutional protection of freedom of the press was extended in *Rosenbloom* v. *Metromedia, supra.* Thus, the ultimate question before us on this appeal is whether there is a genuine issue as to any material fact regarding actual malice (i.e. actual knowledge that the documents were false or a reckless disregard as to whether they were true or false) by the Gazette in publishing the allegedly defamatory news article. In our view, there was not.

Leroy Donald, Jr., state editor of the Gazette, came into possession of the documents that were used as a basis for the allegedly defamatory news article. In his deposition he admitted that he made no attempt to personally determine whether any of the documents were true or false. He was aware that the documents were "emotionally tinged" and that the persons involved "were at each other's throats, tooth and toenail," including accusations that certain individuals involved were untruthful. Further, that the Faculty Commission was referred to as a "lynch mob and pack of wolves out to castrate" appellant. Also, he was basically interested only in whether or not the documents were in existence rather than whether they were true or false. However, Donald merely assigned the story to a reporter. He didn't investigate the situation or write the article published by his paper. Also, by affidavit, he swore he had no actual knowledge of any falsity of any portion of the documents.

Ginger Shiras, a reporter for the Gazette, received

the assignment from Donald and wrote the article. According to her affidavit, she never had any knowledge of the falsity of any statement made in the news article concerning the appellant. It appears that she accurately quoted from the documents. According to her deposition, she was instructed by Donald to determine whether the comments in the documents were true or false. Even though she, also, was aware of the documents being "emotionally tinged" and contained accusations of "lying," her investigation into the matter indicates to us there was no genuine issue as to any material fact with regard to her actual knowledge that the documents were false or a reckless disregard by her for the truth or falsity of the documents. It is appellant's position that the affidavit of the Dean of the Law School reflects the documents were false and acrimonious. However, she talked to the Dean of the Law School on the day she wrote the news article. He had no comment to make about the documents. In her affidavit she stated that he said the matter was under investigation which was welcomed. In her conversation with the President of the University, she was merely informed that he, himself, had been misquoted in the documents. She was unable to reach the Vice-President of the University. Although she attempted several times to contact the appellant and left her telephone number, she was unable to reach him. Also, she had conversations with two of the individual appellees, neither of whom denied the existence or the official nature of the documents.

"The test which we laid down in *New York Times* is not keyed to ordinary care; defeasance of the privilege is conditioned, not on mere negligence, but on reckless disregard for the truth." *Garrison* v. *Louisiana,* 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). There must be a "showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967).

In applying these decisions to the case at bar we are of the view, as was the trial court, that the appellant did not present a genuine issue of a material fact according

to the present standards required of him in a summary judgment proceeding. In other words it is not demonstrated that the news article was published by the Gazette with actual malice; i.e. with knowledge of falsity or with a reckless disregard of falsity. It appears to us and we hold in the case at bar that Miss Shiras met the required investigatory standards as prescribed by the controlling decisions interpreting the First Amendment as to freedom of press. As previously indicated, even a "[f]ailure to investigate does not in itself establish bad faith." *St. Amant* v. *Thompson, supra.*

Appellant collaterally argues that, because he was not supplied with the names of the persons who presented the documents to Donald, the summary judgment should be reversed. We cannot agree. No ruling was made by the trial court upon appellant's motion. It was incumbent upon appellant "to call its motion to the court's attention and obtain a ruling thereon. Failure to do so would constitute a waiver so that the motion could not be considered on appeal." *Flake* v. *Thompson, Inc.,* 249 Ark. 713, 460 S.W. 2d 789 (1970).

By affirming the trial court's action in sustaining the Gazette's motion for summary judgment it becomes necessary also to affirm the approval of the individual appellees' motion to quash the service of summons upon them inasmuch as they are the only remaining defendants who neither resided in Pulaski County nor were summoned therein. Ark. Stat. Ann. § 27-615 (1962 Repl.); *Universal C & T Credit Corp.* v. *Troutt, Ex'x,* 235 Ark. 238, 357 S.W. 2d 507 (1962).

Affirmed.

BYRD, J., not participating.