John SAXTON *v.* ARKANSAS GAZETTE CO.
and Carol GRIFFEE

78-19                                    569 S.W. 2d 115

Opinion delivered July 17, 1978
(In Banc)
[Rehearing denied September 11, 1978.]

134

*Charles S. Gibson,* for appellant.

*Kent R. Foster* and *Phillip Carroll,* for appellees.

FRANK HOLT, Justice. Appellant brought suit against appellees to recover compensatory and punitive damages for libel. In the process of discovery, appellant sought the identity of a source of information referred to by appellee Griffee, a

reporter, in articles written by her and published in the appellee Arkansas Gazette. Griffee refused to reveal her source stating the identity was privileged. Appellant filed a pretrial motion to compel discovery. After a hearing, the court found that appellant had not made reasonable efforts by deposition or other means to learn the identity of the informant nor reasonable efforts to show publication with malice, bad faith and reckless disregard of whether said publications were false or not and therefore denied the motion to force disclosure until the appellant shows that the articles were written and published in bad faith, with malice and not in the interest of the public welfare. Further, the disclosure of sources was privileged pursuant to Ark. Stat. Ann. § 43-917 (Repl. 1977). Subsequently, after giving appellant additional time to complete his discovery and supply the court with depositions in opposition to appellees' motions for summary judgment, the court granted their motions dismissing appellant's complaint. Appellant first contends the court erred in denying his motion to compel appellee Griffee to disclose the identity of her source. Appellant argues that no privilege exists which permits a new reporter's refusal to disclose confidential sources citing *Branzburg v. Hayes*, 408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972); *Carey v. Hume*, 492 F. 2d 631 (D.C. Cir. 1974); and *Caldero v. Tribune Pub. Co.*, 98 Idaho 288, 562 P. 2d 791 (1977), cert. denied, 98 S. Ct. 418 (1977).

However these cases are distinguishable factually and legally from the instant case inasmuch as they all involve the assertion that a reporter has an absolute privilege under the First Amendment of the United States Constitution not to disclose the informant's identity. These cases did not, as here, involve a statutory privilege for news reporters. Significantly, in both *Branzburg* and *Caldero*, it was noted that a number of states, including Arkansas, have provided editors and news reporters with a statutory privilege.

§ 43-917 provides:

Before any editor, reporter, or other writer for any newspaper . . . shall be required to disclose to any Grand Jury or *to any other authority,* the source of informa-

tion used as the basis for any article he may have written, published, or broadcast, it must be shown that such article was written, published or broadcast in bad faith, with malice, and not in the interest of the public welfare. (Italics supplied.)

This section was originally adopted as § 15 of Initiated Act No. 3 of 1936. The Act was entitled an "Act to Amend, Modify and Improve Judicial Procedure and the Criminal Law, and for other purposes." The Act contains various provisions dealing with the administration of justice in our courts which are applicable to both criminal and civil proceedings. Further, the use of the words "to any other authority" in this section of the Act clearly indicates that the privilege asserted here is applicable to civil proceedings. Hence we cannot agree with appellant's argument that this section of the Act is restricted to criminal proceedings.

Appellant also argues that the trial court, by its ruling, imposed upon him, as a condition precedent to any disclosure by appellee Griffee, the burden of meeting the requirements of *N.Y. Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); i.e., proof of malice, bad faith, or reckless disregard of the truth to sustain a libel action. However, this the trial court did not do. The motion to compel was denied by the trial court due to appellant's failure to make a reasonable effort to determine the informant's identity and to make some reasonable showing of publication with malice, bad faith, or recklsss disregard of the truth. In the circumstances, the motion to compel disclosure was properly denied in accordance with our statute. See also *Carey* v. *Hume, supra; Cervantes* v. *Time, Inc.,* 464 F. 2d 986 (8th Cir. 1972); *Baker* v. *F. & F. Investment,* 470 F. 2d 778 (2nd Cir. 1972); and *Garland* v. *Torre,* 259 F. 2d 545 (2d Cir. 1958), cert. den., 358 U.S. 910, 79 S. Ct. 237, 3 L. Ed. 2d (1958).

Neither can we agree with appellant's contention that appellee Griffee, by the voluntary disclosure of the identity of one of her sources, waived whatever privilege she had. Griffee, in her deposition, stated that she had told her boss and a deputy prosecuting attorney the name of the person she thought was her anonymous source. She explained to them that the name "had to be kept confidential, strictly."

However, at the hearing on appellant's motion to compel disclosure, Griffee testified that although she had thought she had determined the identity of the source, she was later told by the deputy prosecutor that she was incorrect. He did not tell her the name of the source. Appellant's argument that Griffee's actions constituted waiver of her asserted privilege is unconvincing and unsupported by any citation of authority. Also it does not appear the argument was presented to the trial court.

Appellant also contends the court erred in granting appellees' motion for summary judgment. He argues that since a summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, the court erred because a fact issue existed, when viewed most favorably to him, as to whether the article was false and also on the issue of knowledge or reckless disregard of its falsity.

However, even if the publication that the minutes were falsified is incorrect, appellant, who is a public official, is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he also "proves that the statement was made with 'actual malice' — that is, with knowledge it was false or with reckless disregard of whether it was false or not." *New York Times* v. *Sullivan*, *supra*, and *Gallman* v. *Carnes*, 254 Ark. 987, 497 S.W. 2d 47 (1973). Further, in *Gallman*, we quoted with approval the passage in *St. Amant* v. *Thompson*, 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968) to the effect that:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. . . . Failure to investigate does not in itself establish bad faith.

Publication with knowledge of falsity or with reckless disregard of whether it was false or not must be proved by "clear and convincing" evidence. *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29, 91 S. Ct. 1811, 29 L. Ed. 2d 296 (1971).

Here both parties submitted depositions and affidavits of witnesses to the court for its consideration in ruling on appellees' motions for summary judgment. The evidence adduced reflects that on June 26, 1975, the Arkansas Soil and Water Commission met to consider applications from various towns for grants and loans, one of which was an application from the City of Mena. Appellee Griffee was present at the meeting. Her notes as well as those of two other persons present (the Commission's secretary and another state employee) reflect that in regard to the Mena application, the Commission referred the application to the Department of Local Services with the recommendation that it receive top priority consideration subject to available funding. On June 27, 1975, the Gazette carried a story under the byline of Griffee which reflected this action. Subsequently, on July 3, 1975, Griffee received an anonymous letter stating that the minutes of the Commission's meeting on July 26 had been written to reflect that it had approved the application and sent it to the Governor for final approval. Thereafter, Griffee commenced her investigation of the matter, and on July 4, 1975, published the first of a series of articles in which it was stated that appellant had falsified the minutes.

The minutes of the meeting, as drafted under appellant's direction, state:

> On motion of Mr. Gibson, seconded by Mr. Landers, the Commission voted to recommend approval of the City of Mena's application of the Water, Sewer and Solid Waste Management Systems Revolving Fund subject to availability of funds. The Commission stipulated that a grant in the amount of $86,000 be made available and the remainder of the city's request, $80,566, should be disbursed as a 40 year loan to be repaid with 5 percent interest.

Appellant admitted tha the Commission later determined that he "had drafted the minutes not in accordance exactly with what they had said." He denied the minutes were false but admitted "that the Commission found that the language [he] inserted concerning the grant and the loan and the terms

of the loan should not have been inserted by [him] in the minutes" and was deleted by it.

Appellant also testified by deposition that he had no evidence to prove that Griffee published the articles with knowledge of any falsity or reckless disregard thereof. He stated he could "only suppose" malice in this case and further, "[o]n that first article, she may have thought what she put in the paper was correct." He asserted that since the Commission approved the minutes after deleting the incorrect portions of them, the court could infer malice on appellees' part. Appellant also presented the affidavit of a Commission member which stated that appellant's draft minutes correctly described the action taken by the Commission.

Appellee Griffee, by affidavit, stated she believed the contents of her articles were true and correct and still believed the minutes prepared by appellant did not correctly reflect the action taken by the Commission. Attached to her affidavit were numerous exhibits which support her conclusion. We see no need to recount further evidence. Suffice it to say that, when the evidence is viewed most favorably to appellant, it certainly cannot be said that he sufficiently demonstrated a fact issue existed in regard to whether the news articles were either written or published with actual malice; i.e., with knowledge of falsity or with a reckless disregard of falsity. Here we are of the view that appellees met the required investigatory standards as prescribed by the controlling decisions interpreting the First Amendment as to freedom of the press. Accordingly, we affirm the trial court's action in sustaining the motions for summary judgment. See *Gallman v. Carnes, supra.*

Affirmed.

HOWARD, J., concurs.

GEORGE HOWARD, JR., Justice, concurring. I concur in the affirmance of the trial court's action in granting a summary judgment in behalf of appellees, Arkansas Gazette Company and Carol Griffee, resulting in a dismissal of the

complaint filed by appellant, Executive Director of the Arkansas Soil and Water Conservation Commission, a public official of the State of Arkansas, alleging that he was libeled by appellees and, accordingly, sought damages in the sum of $1,000,000.00. While the Court bases its decision on appellant's failure to meet certain State statutory requirements, I base my vote to affirm on the belief that the First and Fourteenth Amendments to the United States Constitution afford a greater protection to the press and citizens to criticize and comment freely on the manner in which public officials perform their public stewardship.

It is my view that the privilege to criticize public officials' conduct, despite the possible harm that might develop, is unconditional and absolute. *See: Bridges* v. *California*, 314 U.S. 252, 62 S. Ct. 190; *N.A.A.C.P.* v. *Button*, 371 U.S. 415, 83 S. Ct. 328. Relevant parts of the First Amendment provide as follows:

"Congress shall make no law . . . abridging the freedom of speech, or of the press."

It is universally recognized that the above quoted First Amendment provisions are applicable to States under and pursuant to the Fourteenth Amendment to the United States Constitution.

The position that I take in this case does not mean, however, that the First Amendment protection extends to libelous matters directed against the private conduct of a public official or private citizen.

Generally, legislators, judges, administrative and executive officials possess absolute immunity against liability for defamatory words spoken in connection with their public duties. *See: Barr* v. *Matteo*, 360 U.S. 564, 79 S. Ct. 1335; *City of Chicago* v. *Tribune Company*, 139 N.E. 86. The reason asserted for this immunity is that public officials should be unhampered, or uninhibited, in any way, in serving the public will. Thus, it seems not only from the standpoint of First Amendment protection, but even within the scope of equal protection of the law, that the press and citizens should

likewise be immune from their criticism of official conduct. In this way, the press and citizens will be free "to applaud or to criticize the way public employees do their jobs from the least to the most." *See:* Concurring Opinion of Mr. Justice Black in *Barr* v. *Matteo,* supra.

One may inquire, if the press is afforded an absolute privilege, what protection is there against abuse and reckless reporting. I submit that not only is there an opportunity for the public official to respond with the truth in order to illustrate any unsubstantiated opinions or deliberate misstatements, but those news media that are susceptible to indulging in irresponsible reporting would run the risk of losing credibility and influence in the community. Abridgement of a free press is not the solution. Moreover, it must be remembered that a public official who has assumed the responsibility of handling the peoples' business must expect criticism and comments about his stewardship.

I believe the Court should have gone beyond the statutory law in affirming this case and, accordingly, I submit this concurring opinion.