FRED TAYLOR, Appellee, v. J. B. HUNGERFORD et al., Appellants.

DECEMBER 13, 1927.

REHEARING DENIED APRIL 5, 1928.

*Salinger, Reynolds & Meyers* and *Ralph Maclean*, for appellants.

*T. J. Mahoney* and *Frank Porter*, for appellee.

STEVENS, J.—I. At the time of the publication of the matter complained of, appellee was marshal of the town of Ogden, a position he had held for many years. The defendants are the owners and publishers of the Carroll Herald, a weekly newspaper of general circulation in Carroll County. The article complained of was published by the defendants in the issue of the Carroll Herald of July 23, 1924, and is as follows:

"A Ruffian as Town Marshal.

"There is no question that the conduct of police officers toward tourists and others who pass through the town have a material effect on its business. Business men are directly concerned in the way policemen and others coming in contact with strangers treat transients. Every time outsiders are made sore on the town merchants are losers. We have in mind the mistreatment accorded delegates attending the state convention by an ignorant ruffian who happens to be marshal of the pleasant town of Ogden. There is a nice, clean café there, one that would invite passing travelers to call again. But outside on the sidewalk in front sits a low-browed, ignorant, hard-boiled marshal rearing to get at drivers to insult and humiliate them if they happen to park their cars irregularly, make too much noise with their starter when they depart, or fail to comply with local regulations of which strangers are not informed. Though Ogden is a nice town and has one of the cleanest places to eat on the Lincoln Highway, we advise autoists to drive through without stopping while that coarse ruffian is retained as marshal. He's the most ungentlemanly specimen of white trash we have come across. Why does the mayor keep such a repulsive specimen of humanity in a place where he can do the town so much injury? He ought to be fired, and will be if the mayor cares anything for the good name and business welfare of a good town."

Two or more copies of the Carroll Herald containing the article were forwarded by the publishers to the mayor of Ogden

and to the editor of the Ogden Reporter, which reprinted the article in its issue of July 30th. On the same day, the mayor discharged appellee as marshal. A few days later, appellee, the mayor, and a man by the name of Eibey went to Carroll, interviewed the appellant J. B. Hungerford, and orally and in writing demanded a retraction of the libelous article. Appellants refused to retract, and later this action for damages was commenced by the former marshal. The jury returned a verdict in plaintiff's favor for $3,000. Special interrogatories were submitted, at the request of appellants, and answered by the jury, which allowed $2,000 actual, $400 exemplary, and $600 special damages. The court reduced the verdict $1,000, and overruled appellant's motion for a new trial.

According to the testimony of appellants and other witnesses called in their behalf, a controversy arose between them and appellee on a public street of Ogden, an evening or two prior to the publication of the article complained of. All of the witnesses for appellants testified that they parked the automobile which was being driven by the Baptist minister of Carroll, Reverend Codd, on the main street of the town of Ogden, in front of a café which they entered for the purpose of securing refreshments. They remained in the café a short time, and after they returned, and had entered and started the automobile, appellee approached them in a loud, boisterous, and angry manner, reproaching them for the way they had parked, or were driving, the automobile, and compelled them to return east to a street intersection, and turn in the manner directed by him, before leaving the town. The manner and appearance of appellee are described by the witnesses as harsh, angry, and threatening. Appellee admitted that he required the car to be driven as claimed by appellants, but denied that he was angry or discourteous to them in any particular.

The foregoing matters were pleaded by the defendants as privileged, and in mitigation of damages. The case was apparently tried and submitted to the jury on both sides upon the theory that the article complained of was libelous *per se*. It is now contended by appellants that the court should have submitted the question as to whether it was libelous *per se* to the jury as an issue of fact, and that the failure to do so constitutes reversible error.

The question was raised by proper exceptions to the instructions. The article refers to appellee as a "low-browed, ignorant, hard-boiled marshal," an "ignorant ruffian," and "that coarse ruffian," and as "the most ungentlemanly specimen of white trash we have come across." That this language far transcends the limit of reasonable and legitimate criticism of the acts and conduct of a public officer must, of course, be conceded. The reference to appellee as an "ignorant ruffian," and as a "coarse ruffian," went directly to his private character, and not to his capacity as a public officer. Webster defines a "ruffian" as "a boisterous, cruel, brutal fellow; a desperate fellow ready for murderous or cruel deeds; a cutthroat. Brutal, cruel, murderous, boisterous, violent, stormy." To classify an individual as a ruffian is to characterize him as unworthy and unfit for social intercourse, dangerous, and possessed of criminal tendencies or character. The language of the article was clearly defamatory and libelous *per se*. *Fey v. King*, 194 Iowa 835; Section 13256, Code of 1924. The court, therefore, properly instructed the jury to that effect.

II. One of the contentions of appellants in the court below and in this court is that appellee failed to prove himself entitled to special damages. The special damages pleaded and allowed were intended to compensate appellee for the loss of position as marshal of the town of Ogden. In this connection, the court permitted the mayor to testify that, after the article complained of became public in Ogden, he received complaints from citizens about retaining appellee as marshal; that two or three of the merchants stated to him that, if the accusations were true, something ought to be done about it; that he talked the matter over with severa. of the merchants and the members of the town council. His testimony was quite indefinite as to what was said, and was intended to show that publication of the libelous article was the cause of appellee's removal as marshal. The mayor testified that he discharged appellee because of the publication of the article in the Carroll and Ogden papers. The testimony of this witness was weakened to some extent on cross-examination, which brought out the fact that the publication of the article might not have been the sole cause of the discharge. Testimony was admissible on behalf of appellee to prove, if

possible, that the loss of his position was attributed wholly or in part to the publication of the libelous article. We think the testimony complained of was properly received.

III. At the close of the plaintiff's testimony, appellants moved the court to withdraw from the jury the issue as to special damages, but no motion was made for a directed verdict as to other damages. The motion was overruled, and we think properly so. If the defendant's discharge as marshal was the result of the publication of the defamatory article, then he was clearly entitled to plead and recover such special damages as he was able to prove resulted therefrom. The jury may well have found from the evidence that, but for the publication of the article complained of, appellee would not have been removed from his position as town marshal. The evidence fairly shows that his removal was due thereto. What is said above disposes of appellants' contention as to Instruction 9.

IV. It is urged by counsel with much earnestness that the verdict was so excessive as to indicate passion and prejudice on the part of the jury. The verdict as rendered was too large.  The court met this situation by requiring the plaintiff to remit $1,000, thus reducing the verdict one third. The award of exemplary damages was not unreasonably excessive, nor do we find evidence in the record upon which the court can say that the sum allowed as special damages is seriously out of proportion to the loss sustained. This leaves $1,000 as actual damages. It may be conceded that the amount is large; but, when the record is considered as a whole, the court would not be justified in setting the verdict aside on this ground. It is true that the Carroll Herald did not have general circulation in Ogden or Boone County, but the article in question was manifestly given large publicity in that vicinity. Appellant J. B. Hungerford admitted that he mailed a marked copy of the Herald to the editor of the local paper, without restraint on its publication. Appellants cannot, therefore, well complain of the publicity given thereto.

We find no reversible error in the record, and the judgment of the court below is affirmed.—*Affirmed.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.