Gerald P. Cttlkin, J.
This is an action for libel. Plaintiff seeks $1,000,000 damages by reason of an article appearing in Life magazine. Defendant Time, Inc. and defendant Sandy *770 Smith, in companion motions, move for summary judgment pursuant to CPLB. 3212. Plaintiff Martin “ Bed ” Schwartz makes a cross motion for an order pursuant to CPLB 3124 compelling defendant Sandy Smith to answer certain questions propounded to him during his examination before trial and upon his failure to answer said questions to strike his answer pursuant to CPLB 3126.
The Life article of which complaint is made appeared in the June 20, 1969 issue of that magazine and dealt with the then front page story of Joe Namath’s resignation from organized football following a directive by Football Commissioner Peter Bozelle that Namath give up his interest in his nightclub Bachelors III, since it was frequented by “ undesirables”. After giving the background of the controversy, the article went on to detail that there were at least 13 “ hoods ” and “ undesirables ” who frequented the club including three Cosa Nostra members, two thieves, two drug dealers and six gamblers, including plaintiff Schwartz, who were characterized as being “unsavory”. The plaintiff was named with five other men as being ‘ ‘ gamblers, principally lottery operators and bookies.” The first cause of action is based on the article itself and the second and third causes of action upon quotations from the article in New York and Los Angeles neivspapers. The fourth cause of action is directed against the New York Times.
Defendants’ position is that Smith’s characterizations of the plaintiff as published by Time, Inc. are protected by the First Amendment to the United States Constitution, unless plaintiff can demonstrate ‘‘ actual malice ’ ’. They contend that Smith’s refusal to disclose sources cannot bar the granting of summary judgment which is mandated by constitutional principles.
Plaintiff argues that he has raised an overriding issue of fact which warrants the denial of defendants’ motions for summary judgment. That issue of fact is whether defendants did act with ‘‘ actual malice ’ ’ in publishing untrue statements with respect to the plaintiff. Plaintiff contends that he will be able to prove, with convincing clarity, at trial, that defendants Smith and Time, Inc. .acted with reckless disregard for the truth. He asks that defendants’ motions for summary judgment be denied and plaintiff’s cross motiop. for an order compelling the defendant Smith to reveal his sources of information should be granted.
There can no longer be any doubt that the publication of which this action- complains falls within the scope of the privilege afforded by the First Amendment. Under that privilege, first enunciated in New York Times Co. v. Sullivam (376 U. S. 254 *771 [1964]), a publisher is protected with respect to publications concerning matters of “ public interest ”. The court held, there, that publications involving the activities of persons holding public office were constitutionally protected. While New York Times happened to involve the case of a public official, the rationale for the privilege was clearly broad enough to justify its extension to all matters of general or public concern. The concepts of “ public official” and “public figure” are but one facet of, and are comprehended within, the concept of “ public interest ” as expressed by the explicit language of the Supreme Court in New York Times Co. v. Sullivan, supra, p. 269; Garrison v. Louisiana, 379 U. S. 64, 74-75 (1964); Rosenblatt v. Baer, 383 U. S. 75, 84-86 (1966); Time v. Hill, 385 U. S. 374, 387-388 (1967); Curtis Pub. Co. v. Butts, 388 U. S. 130, 150—152 (1967); and St. Amant v. Thompson, 390 U. S. 727, 731-732 (1968).
It became apparent that legitimate public interest in the subject matter of the publication, rather than the identity of the plaintiff, was the proper focus of the constitutional inquiry. Numerous Courts of Appeals have explicitly so held. (United Med. Labs. v. Columbia Broadcasting System, 404 F. 2d 706 [9th Cir., 1968], cert. den. 394 U. S. 921 [1969]; Time v. McLaney, 406 F. 2d 565 [5th Cir., 1969], cert. den. 395 U. S. 922 [1969].) Finally, in Rosenbloom v. Metromedia (403 U. S. 29), the Supreme Court expressly adopted the “ public interest ” test for defamation. Thus, it is now settled that the constitutional-privileges announced in New York Times apply to all publications regarding matters as to which .the public has the right to be informed.
New York courts also held, even before Bosenbloom, that communications involving matters of public concern must fall within the protection of the Neiv York Times privilege. (Garfinkel v. Twenty-First Cent. Pub. Co., 30 A D 2d 787 [1st Dept., 1968]; All Diet Food Distrs. v. Time, 56 Misc 2d 821 [1967]; Fotochrome v. New York Herald Tribune, 61 Misc 2d 226 [1969].)
The activities of organized crime, which is what is involved in this case, is clearly such a matter of public concern and interest. The pervasive influence of criminal organizations is constantly in the public mind and has been a major issue in recent years. As a result the mantle of constitutional protection covers the article upon which this suit is brought.
The Supreme Court has laid down the following constitutional standards for publications entitled to protection: a plaintiff may not recover unless he proves with ‘ ‘ convincing clarity ’ ’ that the article was published “ with ‘ actual malice ’ — that is, with *772 knowledge that it was false or with reckless disregard of whether it was false or not. ” (New York Times Co. v. Sullivan, 376 U. S. 254, 280, supra). It is for the courts to determine whether this standard has been met. They must examine the statements in issue and the circumstances under which they were made, to ascertain whether the proof presented to show “ actual malice ” has 1 ‘ the convincing clarity which the constitutional standard demands ”. (Id. pp. 285-286.) These principles, enunciated in New York Times and repeated in Garrison v. Louisiana (379 U. S. 64, 74, supra) have remained constant as the Supreme Court has extended the doctrine of New York Times to articles involving public figures and matters of public interest. In St. Amant v. Thompson (390 U. S. 727, 731) the court explained that: “ These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.”
The burden of proving actual malice is on the plaintiff (Cepeda v. Cowles Mags. & Broadcasting, 392 F. 2d 417 [9th Cir., 1968], cert. den. 393 U. S. 840 [1968]), who must make an affirmative showing of facts from which defendants’ probable knowledge of constitutional falsity may be constitutionally sustained. (Thompson v. Evening Star Newspaper Co., 394 F. 2d 774, 776 [D. C. Cir.], cert den. 393 U. S. 884 [1968].) The mere hope of questioning the credibility of defendants’ witnesses is not sufficient to resist summary judgment. (Hurley v. Northwest Pubs., 273 F. Supp. 967, 974 [D. Minn., 1967], affd. on opn. below 398 F. 2d 346 [8th Cir., 1968].) Further, “actual malice” may not be presumed or inferred from the nature of the defamatory statement (New York Times Co. v. Sullivan, supra, 273). Neither may it be inferred from the failure to seek out plaintiff to verify the facts before publication (Hurley v. Northwest Pubs., supra).
The facts of this case reveal reasonable care in the research and preparation of the article. The depositions of the employees of Time, Inc. show the editorial process by which this article was prepared. Defendant Time, Inc. reasonably relied upon a careful investigation by a knowledgeable, experienced crime reporter whose reputation for integrity is impeccable. The plaintiff has not offered evidence that suggests to this court that Smith or Life magazine had any reason whatsoever to doubt that the mat *773 ters reported were true. It is not enough for plaintiff to try and show that defendants could have investigated more. Negligence cannot be equated with knowledge or serious doubt. Also, plaintiff’s contentions as to the falsity of the article do not bear upon proof of knowledge of falsity. The record clearly indicates that plaintiff is unable as a matter of law to discharge the burden imposed on him of showing defendants’ knowledge of falsity.
The necessary constitutional corollary to the constitutional test and its application is that summary judgment must be granted as soon as it becomes clear that plaintiff cannot establish “ actual malice ”. In Dombrowski v. Pfister (380 U. S. 479, 487 [1965]), the court made clear that it is necessary that frivolous libel suits be dismissed summarily to avoid the “ chilling effect ” on freedom of speech and press that an expensive defense entails. In Washington Post Co. v. Keogh (365 F. 2d 965, 968 [D. C. Cir., 1966], cert. den. 385 U. S. 1011 [1967]), the court held that the defendant was entitled to summary judgment, stating that summary judgment was an essential part of the rules developed to ensure the First Amendment guarantee of freedom of press. The Keogh reasoning has since been followed by a multitude of First Amendment cases which have granted summary judgment in applying constitutional principles. (Hurley v. Northwest Pubs., 273 F. Supp. 967 [D. Minn., 1967], affd. on opn. below 398 F. 2d 346 [8th Cir., 1968]; Thompson v. Evening Star Newspaper Co., 394 F. 2d 774 [D. C. Cir.], cert. den. 393 U. S. 884 [1968]; Time v. McLaney, 406 F. 2d 565 [5th Cir.] cert. den. 395 U. S. 922 [1969]; Bon Air Hotel v. Time, 295 F. Supp. 704 [S. D. Ga., 1969], affd. 426 F. 2d 858 [5th Cir., 1970].)
The reasoning in the above cases is fully accepted by the courts of the State of New York. (Cohen v. New York Herald Tribune, 63 Misc 2d 87 [Sup. Ct., Kings County, 1970]; Droner v. Schapp, 34 A D 2d 823 [2d Dept., 1970]; Lloyds v. United Press Int., 63 Misc 2d 421 [Sup. Ct., N. Y. County, 1970]; Silbowitz v. Lepper, 32 A D 2d 520 [1st Dept., 1969]; Pauling v. National Review, 22 N Y 2d 818 [1968]; Gilberg v. Goffi, 21 A D 2d 517 [2d Dept., 1964], affd. without opn. 15 N Y 2d 1023 [1965]; Frink v. McEldowney, 29 N Y 2d 720 [1971].)
Moreover, failure by a defendant to disclose the identity of all its sources will not bar the granting of summary judgment, at least with respect to articles dealing with subjects of vital public interest, such as organized crime, provided sufficient other proof and sources are disclosed to satisfy a court of the defendants’ good faith. (Cerrito v. Time, 302 F. Supp. 1071 [N. D. *774 Calif., 1969], affd. 449 F. 2d 306 [9th Cir., 1971]); Konigsberg v. Time, 312 F. Supp. 848 [S. D. N. Y., 1970]; Cervantes v. Time, 330 F. Supp. 936 [E. D. Mo., 1971].)
Here, defendant Smith has not revealed his sources for valid reasons. A disclosure of names would involve a material threat of mob reprisals against these informants. Moreover, disclosure would tend inevitably to cut off Smith’s access to these and other informants, at once destroying his capacity as a reporter in an area of critical importance to the public and depriving him and the public of the fundamental right of access to the news under the First Amendment. Defendants rightfully contend that the identity of Smith’s informants is not material to the primary issue of whether Life’s actions in printing the statement concerning plaintiff was malicious and was made with reckless disregard of the truth. The defendant Time, Inc. reasonably relied on Smith’s reputation and the review of its editorial staff in reaching the conclusion that the allegations made were substantially true. Plaintiff has failed to present evidence which would lead this court to conclude that Time’s asserted failure in requiring defendant Smith to disclose the identity of his sources was motivated by malice or reckless disregard.
Accordingly, the defendants’ motions for summary judgment are granted.
Plaintiff’s motion to compel Smith to reveal his sources is accordingly denied.