[No. 643-42391-3.   Division Three.   December 5, 1972.]

WILLARD CHASE, *Appellant*, v. THE DAILY RECORD, INC.,
*Respondent.*

*J. P. Tonkoff* (of *Tonkoff, Dauber & Shaw*), for appellant.

*Alan A. McDonald* (of *Halverson, Applegate, McDonald, Bond, Grahn, Wiehl & Almon*), for respondent.

MUNSON, C.J.—Plaintiff appeals an order granting defendant's motion for summary judgment in a libel action. We conclude the quality of the evidence presented by plaintiff, on defendant's motion for summary judgment,

2

does not meet the constitutional standard required by the United States Supreme Court before a case of defamation, brought by a public official, can be allowed to go to the jury.[1]

In the spring of 1971, plaintiff, the owner of the Cle Elum weekly newspaper, was a commissioner of the Kittitas County Port District. As a result of a state audit of the port district, the State Attorney General requested plaintiff, and other port officials, to make "repayment" of certain sums to the port district. Plaintiff did pay in excess of $500 to the port district for a trip he was scheduled to, but did not, take to Washington, D.C. A commissioner of the local public utility district took the trip due to plaintiff's inability to take it.

Realizing that defendant, a daily newspaper located in Kittitas County, would undoubtedly publish a news story relating to payment of this money, plaintiff, on April 9, 1971, discussed the matter with the owner-publisher of the newspaper. Later in the day, plaintiff concluded he should seek to have his own prepared statement published in the defendant newspaper. He called the publisher but found him unavailable; he spoke to the editor instead. The editor advised him to prepare a statement of his version of the facts and submit it to the newspaper. Plaintiff prepared his statement that evening. The following morning he telephoned the editor and read his statement to him. The editor read at least a portion of this statement back to plaintiff. Whether the editor took down the entire statement and repeated it in toto, or repeated only that portion of the statement he transcribed in writing, is a question of fact left undecided by the record before us. The draft of plaintiff's prepared statement is attached hereto as Appendix A.

On April 10, 1971, defendant published an item relating

---

[1]*Time, Inc. v. Pape,* 401 U.S. 279, 28 L. Ed. 2d 45, 91 S. Ct. 633 (1971); *Rosenblatt v. Baer,* 383 U.S. 75, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *Time, Inc. v. McLaney,* 406 F.2d 565 (5th Cir. 1969), *cert. denied,* 395 U.S. 922, 23 L. Ed. 2d 239, 89 S. Ct. 1776 (1969); *cf. Miller v. Argus Publishing Co.,* 79 Wn.2d 816, 490 P.2d 101 (1971).

to plaintiff's payment of the money containing quotations from the statement prepared by plaintiff. The published article is attached hereto as Appendix B. The article, as published, did not include plaintiff's assertion that he received no money as reimbursement for the trip he did not take.

The failure of the newspaper to insert plaintiff's statement that he received no money for this trip in the published article forms the basis for plaintiff's action in libel. Plaintiff alleges this omission was done knowingly and maliciously.

The trial court granted defendant's motion for summary judgment on the ground that plaintiff failed to present sufficient evidence to establish a genuine issue of fact as to one necessary material element, *i.e.*, actual malice.

We have read the myriad of libel cases beginning with *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964) and reach the same result as did Division Two of this court in *O'Brien v. Tribune Publishing Co.,* 7 Wn. App. 107, 110-15, 499 P.2d 24, *review denied,* 81 Wn.2d 1007 (1972): Plaintiff has not presented sufficient facts to establish a genuine issue of actual malice. We agree with the analysis of the law set forth in *O'Brien* and find no need to reiterate that analysis.

It is unquestioned that plaintiff is a public official. Before a cause of action exists, based on libel, plaintiff must establish the element of actual malice. *New York Times Co. v. Sullivan, supra; Miller v. Argus Publishing Co.,* 79 Wn.2d 816, 490 P.2d 101 (1971). Further, plaintiff must sustain this burden by clear and convincing proof; but as stated in *Miller,* this burden "does not demand conclusive evidence of knowing or reckless falsity". Actual malice is defined as "with knowledge that it was false or with reckless disregard of whether it was false or not". *New York Times Co. v. Sullivan, supra.*

In this case, defendant's motion for summary judgment was based on the affidavits of the publisher and editor of defendant, as well as upon discovery depositions taken of

the parties. Defendant publisher and editor denied any malice. Thus, plaintiff had the burden of producing sufficient facts in the summary judgment proceeding to establish a genuine issue of fact which, if believed, could persuade a jury with convincing clarity that defendant was guilty of actual malice in failing to insert plaintiff's denial of having received any money in connection with the trip. *Tait v. KING Broadcasting Co.,* 1 Wn. App. 250, 255, 460 P.2d 307 (1969); *O'Brien v. Tribune Publishing Co., supra.*

In support of plaintiff's position, we have these facts before us: (a) the prepared statement as set forth in Appendix A; (b) the newspaper article as set forth in Appendix B; (c) plaintiff's assertion that after the editor had reread the statement to plaintiff, he again requested, urged or ordered the editor to insert his statement that he had not received any money as reimbursement for the trip; (d) that the day before publication of the article plaintiff had advised the publisher of his payment to the port district and the circumstances involved therein; and (e) that the publisher previously evidenced his dissatisfaction with the operation and management of the port district and had urged plaintiff to resign.

We feel that none of these items, individually or collectively, satisfy the constitutional standards now required by the United States Supreme Court before allowing a case to go to the jury. Hence, we find defendant's motion was properly granted. *See O'Brien v. Tribune Publishing Co., supra.*[2]

█ Prior to granting the motion for summary judgment, the trial court granted defendant's motion to strike the punitive damage allegations from plaintiff's complaint.

---

[2]Though we agree with plaintiff's assertion that decision on these matters by summary judgment is somewhat unsatisfactory, that is not to say it cannot be done. *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858 (5th Cir. 1970); *United Medical Lab., Inc. v. Columbia Broadcasting Sys., Inc.,* 404 F.2d 706 (9th Cir. 1968), *cert. denied,* 394 U.S. 921, 22 L. Ed. 2d 454, 89 S. Ct. 1197 (1969); *Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C. Cir. 1966); *Time, Inc. v. McLaney, supra; see also* 20 A.L.R.3d 988 (1968); *Treutler v. Meredith Corp.,* 455 F.2d 255 (8th Cir. 1972).

Plaintiff assigns error thereto. Claims for punitive damages have consistently been denied in this state. *Maki v. Aluminum Bldg. Prods.,* 73 Wn.2d 23, 436 P.2d 186 (1968); cf. *Rosenbloom v. Metromedia,* 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971) (dissenting opinion). Plaintiff's assignment of error is not well taken.

Judgment affirmed.

GREEN and EDGERTON, JJ., concur.

Petition for rehearing denied December 14, 1972.

Review granted by Supreme Court February 6, 1973.

---

### APPENDIX A

" 'Dedicated to Community Service' has been my slogan during the 40 years that I have been in the newspaper business. Under this banner I have learned to accept criticism and abuses as one of the hazards. This has been true in my position as an unsalaried Port Commissioner. However, I and other Port officials feel that there is [s]omething unfair about a law that permits the leving [*sic*] of heavy fines, under the threat of being sued, without a hearing.

"More than one attorney and auditor have wondered why I was asked to repay the expenses of a trip to Washington which I did not take, and for which there was no money paid to me. Legal counsel that I have received advises that a fine levied against me in connection with the recent port audit, could be reversed in court; but, the cost to me would no doubt be many times the fine, plus lengthy time away from my business.

"My concern for continuation of and harmony in the Port led me to swallow some pride, save some money and pay the fine. My checks were submitted and accepted with the following comment:

" 'I am not admitting to any wrong doing. Since there is no means of appeal other than an expensive court trial, for which I have neither the time or money, there is no other choice. It is my understanding that this closes the case as far as I am personally concerned in the matter of legal action and further damaging publicity'."

### APPENDIX B

"Port repayment made

"State Attorney General's office in Olympia Friday said re-payments and penalties have been made to the Port District by two Kittitas County Port officials.

"A spokesman at the office said resigned Commissioner Phil Kern had made a payment of $994.93 and Commissioner Willard Chase payments of $551.69 and $19.43. All payments were made to the County Port District and were termed as 're-payment and penalty', relative to the recent audit of the Port. They said the action was 'completed.'

"The spokesmen declined to make any statement regarding commis-

sioner Pat Mundy and Port Manager Robert (Buck) Buchanan. Cases are pending against the two men in Superior Court.

"Buchanan did state Thursday at a port meeting that he had been fined more than $4,000 for his work promoting the Ellensburg Rodeo as a result of the state audit.

"Chase said, 'Legal council that I received advises a penalty against me in connection with the audit could be reversed in court, but the cost to me would no doubt be many times the penalty plus lengthy time away from my business. My concern for continuation of, and harmony in the Port led me to swallow some pride, save some money and pay the penalty.

" 'My checks were submitted and accepted with the following comment: "I am not admitting to any wrong-doing. Since there is no means for appeal other than an expensive court trial, for which I have neither time nor the money, there is no other choice. It is my understanding that this closes the case as far as I am personally concerned in the matter of legal action and further damaging publicity." '

"The larger amount was for a Port trip he did not take to Washington D.C. in pursuit of a grant for a steam plant and smaller amount for promotion of a motorcycle event in Upper county.

"Kern confirmed the amount and said, 'I bought the color separations (used in making printing plates) from the port.' "