**John F. DAVIS, Appellee,**

v.

**William J. COMITO, Appellant.**

No. 55177.

Supreme Court of Iowa.

Feb. 21, 1973.

Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

William D. Baker, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

MASON, Justice.

This appeal by defendant, William J. Comito, stems from a summary judgment for John F. Davis, plaintiff, in a law action seeking judgment on Comito's promissory note executed September 10, 1964 and delivered to plaintiff December 11. It presents the question whether there was a genuine issue as to any material fact generated by the record before the trial court thus precluding it from finding Davis was entitled to judgment as a matter of law.

Rule 237(c), Rules of Civil Procedure, provides in part: " * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of the summary judgment is to enable a party to obtain judgment promptly and without expensive trial where there is no fact issue to try. Jensen v. Voshell, 193 N.W.2d 86, 88 (Iowa 1971). See also Gruener v. City of Cedar Falls, 189 N.W.2d 577, 580 (Iowa 1971). However, where a fact issue is generated by the pleadings, depositions, affidavits or other instruments before the court a motion for summary judgment should not be sustained. Sherwood v. Nissen, 179 N.W.2d 336, 339 (Iowa 1970) and Northwestern Nat. Bank of Sioux City v. Steinbeck, 179 N.W.2d 471, 475 (Iowa 1970).

The record before this court, that is, the pleadings, plaintiff's motion for summary judgment, defendant's resistance to the motion, plaintiff's affidavits, defendant's testimony and the trial court's decision, presents the background giving rise to this litigation.

William J. Comito was president of the Premium Service Company from the date of its incorporation until December 13, 1963. On that date he was removed from

the office by his father, the majority stockholder, who then became president of the company.

John Burch purchased 1000 shares of Premium Service Company stock for $10,000. Later, Burch approached defendant accusing him of misfeasance in the discharge of his duties as president and threatened to disclose this fact. Defendant later testified no such charge had been made. However, defendant executed a promissory note in the amount of $5000 on September 10, 1964, payable to Burch and/or plaintiff. Defendant further testified the note was not made to appease Burch but simply was done because he "wanted to buy the stock."

At the time the note was made plaintiff, defendant and defendant's lawyer, Louis Anania, executed an escrow agreement. It provided the note be placed in escrow until plaintiff "delivered" to the escrow agent the stock certificate representing the 1000 shares of stock in Premium Service Company owned by Burch. When this certificate was delivered the escrow agent would then deliver defendant's note to plaintiff. Both the escrow agreement and note were prepared by Anania and he was named as the escrow agent.

It was the original agreement that "delivery" of the stock certificate would be made before January 1, 1965. This was the date payment on the note at the rate of $200 per month would begin. Both parties knew the Premium Service Company was to be dissolved on December 16, 1967. Defendant was aware that if he received title to the certificate prior to December 16, 1964 he would be entitled to his proportionate share of the company's assets remaining to be distributed at the time of dissolution. Further, should there be no assets in the company, the loss represented by the stock certificate would result in an income tax advantage over the following five years as a capital loss advantage. With this in mind, defendant requested the final date of delivery be changed to December 15, 1964 in place of January 1, 1965. This was done.

Plaintiff then retained possession of the stock certificate until December 11, 1964 when he gave the certificate to Anania without endorsing or assigning the certificate to defendant. In accordance with the escrow agreement, Anania then gave plaintiff the promissory note. The interest of John Burch had been assigned to Davis.

In the ensuing years, any effort on the part of plaintiff to collect payment of the note was met with defendant's claims of inability to pay. At no time did defendant raise the question of proper endorsement of the stock or assignment of it until after plaintiff filed his petition February 19, 1971 seeking to recover on the note.

May 14 plaintiff filed motion for· summary judgment pursuant to rule 237, R.C. P., alleging substantially the same factual matters stated in the petition. In his personal affidavit attached to the motion plaintiff asserts the amounts stated in his petition and motion are due and unpaid and he believes no defense exists against the claim since "the note was entered into with due and full consideration and in the legal course of business."

May 20 defendant filed answer to plaintiff's petition. He admitted execution of the note and plaintiff's ownership thereof but denied the note was past due. As an affirmative defense he alleged execution of the escrow agreement and attached a copy to his pleading. He further alleged plaintiff's failure to assign the certificate of stock to defendant rendered the note null and void; that no consideration for defendant's note was ever furnished by plaintiff; and since defendant was under medication at the time the note and escrow agreement were executed he did not understand his actions.

In resistance to plaintiff's motion for summary judgment defendant repeats his denial of consideration for the note and plaintiff's failure to assign the stock certificate to defendant. He further stated that at the direction of a Dr. From, who was treating defendant as a result of a nervous breakdown, he signed the note and escrow

agreement to avoid litigation threatened by Burch for alleged misappropriation of funds from the Premium Service Company.

Plaintiff filed a second personal affidavit in support of his motion asserting:

"At no time prior to the filing of defendant's resistance, has any complaint been made to plaintiff that the defendant did not receive the stock as contemplated by the escrow agreement. Although contact has been made a number of times with defendant in regard to payment of the note, no defense or excuse has been given by defendant other than defendant's alleged inability to pay. Plaintiff is reliably informed that defendant did not even ask the escrow agent for said stock certificate until after this action, as a suit on the note, was commenced. Plaintiff's records show that on January 29, 1965, plaintiff wrote the first letter to Mr. Comito requesting he commence payments. At that time, on or about February 17, 1965, Mr. Comito called plaintiff stating that he was unable to pay at that time and that he would need more time before he could commence payments."

On June 8, 1971, the trial court overruled plaintiff's motion for summary judgment.

Thereupon, plaintiff filed a motion to reconsider which was sustained by the trial court June 18 and a hearing on the motion for summary judgment was held June 29. Plaintiff elected to rely on his pleadings and affidavits but defendant testified as to the situation of the parties, the circumstances under which the note and escrow agreement were executed and the objects the parties were striving to attain.

Mr. Louis Anania was in the courtroom during the hearing but was not called as a witness.

The court sustained the motion and entered judgment against defendant in which it stated:

"After hearing the evidence in this case to the extent of what the understanding of the parties is, it seems to the court that the agreement has to speak for itself. Mr. Anania by everybody's admission was representing Mr. Comito at this time. He initialed and signed the escrow agreement. If they had wanted a transfer of the certificate, they could have obtained it. The evidence is there never was a request for a transfer. There is no dispute in the evidence but what the certificate itself was delivered into the hands of the attorney or Mr. Comito, and at that time the note was turned over to the plaintiff, Mr. Davis. While Mr. Comito had unfortunate health and has not cared about what was being done and possibly cannot remember many of the details of this transaction as he testified, while this is unfortunate for him, it should not affect the rights of Mr. Davis, who was in good faith and did turn the stock certificate over in time, that is, to the attorney for Mr. Comito in time that if it was necessary at the time of dissolution to have got a transfer, it could have been requested and done. Mr. Anania is an attorney and knowledgeable in these matters, knew what was going on and represented his clients. For these reasons the court is constrained to sustain the motion for summary judgment at this time and judgment is entered on the note, or will be when Mr. Davis presents a judgment entry."

Judgment was entered against William J. Comito by the trial court's judgment entry dated and filed June 30, 1971.

I. In the two errors relied on for reversal defendant contends the trial court erred in sustaining plaintiff's motion. He first asserts a genuine issue of a material fact was generated by the record before the trial court as to the meaning of the words "deliver" or "delivery" used in the escrow agreement. He next maintains the court was apprised through the pleadings, affidavits and defendant's testimony that a genuine issue existed as to the meaning the parties intended in using those terms in the escrow agreement.

The escrow agreement appears in the record in the following form:

## "ESCROW AGREEMENT

"This Agreement made and entered into this 10th day of September, 1964 by and between William Comito, John F. Davis and Louis Anania,

"WITNESSETH:

"William Comito hereby places in escrow a note for $5000.00 dated September 10, 1964 and payable at the rate of $200.00 per month commencing ~~January~~ December 15, 1964 ~~1, 1965~~ payable to John F. Davis and John H. Burch. The escrow agent therefor shall be Louis Anania. Louis Anania is instructed and agrees to deliver said note to John F. Davis upon delivery by John F. Davis to Louis Anania of a stock certificate for 1000 shares of stock in the Premium Service Co.

"It is further agreed that if said stock is not delivered to Louis Anania on or before January 1, 1965 then Louis Anania shall not be obligated to deliver said note and shall return same to William Comito.

"It is further agreed that John F. Davis may use said stock to take such action as may be necessary to recover the amount of approximately $2000.00 from Frank Comito and Premium Service Co. without affecting this agreement in any way, provided said stock delivery be made to said escrow agent by ~~January~~ December 15, 1964 ~~1, 1965~~ as above provided.

s/ William Comito
_____
William Comito
s/ John F. Davis
_____
John F. Davis
s/ Louis A. Anania
_____
Louis Anania      "

The two changes in dates in the foregoing agreement were each initialed by plaintiff, defendant and the escrow agent.

Defendant admits the certificate of stock was given to Louis Anania as escrow agent. He also concedes that if the terms "deliver" or "delivery," as used in the escrow agreement can only mean a manual transfer of possession of the stock certificate, then his appeal must fail. However, defendant argues that these terms in the escrow agreement meant a final and absolute transfer of the stock of the Premium Service Company to himself or the final act toward the execution of such transfer. He insists a certificate of stock is merely written evidence of the ownership thereof not the stock itself. It is established beyond question the stock certificate was not transferred or assigned into the name of William J. Comito.

As we understand, the underlying basis of defendant's argument is his contention that the note sued upon lacked consideration by reason of plaintiff's failure to have the Burch stock certificate endorsed or assigned to him. It will be recalled defendant had alleged such theory both in answer and in resistance to plaintiff's motion for summary judgment. The importance of plaintiff's contention that a genuine issue existed as to the meaning of the terms "deliver" or "delivery" used in the escrow agreement thus becomes apparent.

In this proceeding for summary judgment the trial court's function was to determine whether such a genuine issue existed as to the meaning the parties intended by the use of those terms in the escrow agreement.

When a trial court is confronted with such motion under rule 237, R.C.P., it is required to examine the entire record before it, including the pleadings, admissions, depositions, answers to interrogatories, and affidavits, if any, to determine for itself whether evidentiary facts are presented which, if decided in favor of the defendant, would amount to a good defense to the action. Continental Ill. Nat. B. &

T. Co. v. Security State Bank, 182 N.W.2d 116, 118 (Iowa 1970), citing authorities.

Bauer v. Stern Finance Company, 169 N.W.2d 850, 853 (Iowa 1969), has this statement:

"The rule provides that a party may not 'rest upon the mere allegations or denials of his pleading.' He must set forth specific facts showing there is a genuine issue. He cannot merely say there is one; but it must appear 'by affidavits or otherwise' that this is the case."

■ The rules of pleading are invoked by the court to determine whether such sworn statements of fact are sufficient to show a real defense as distinguished from conclusions. " 'A pleader must plead the ultimate facts in the case. He cannot plead conclusions by themselves.' " Northwestern Nat. Bank of Sioux City v. Steinbeck, 179 N.W.2d at 477 and authorities cited.

■ However, the burden is upon the movant for summary judgment to show absence of any genuine issue of a material fact. All material properly before the court must be viewed in a light most favorable to the opposing party. Continental Ill. Nat. B. & T. Co. v. Security State Bank, 182 N.W.2d at 118.

■ Thereafter, if by an examination of such records any allegations asserting evidentiary facts appear which if found to be true would constitute a good defense to the action, the court under this rule must assign the matter for trial and should not sustain the motion for summary judgment.

The question of how a trial court ascertains for itself whether a genuine fact issue exists was considered in Sherwood v. Nissen, 179 N.W.2d at 339. We repeat what was said there:

"It is said that 'functionally the theory underlying the motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict.' Moore, supra, [6 Moore, Federal Practice, (2d ed. 1966)] 2043. Under the rule on summary judgments, the judge has before

him the material on file in the case. Moore, 2438–39. If, upon the basis of such of that material as would be competent proof he would direct a verdict for movant, then it is proper to render summary judgment. Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, 971 ('a summary disposition * * * should be on evidence * * * which would require a directed verdict for the moving party'); Wolf v. Schaben, 272 F.2d 737, 741 (8 Cir.) ('Had the case gone to trial, the trial court would have been compelled to direct a verdict for the appellee'); Moore, supra 2440 ('In determining whether he has borne his burden, the analogy between a motion for a directed verdict and a motion for summary judgment is helpful')."

■ In performing its function in this proceeding the court properly considered relevant extrinsic evidence offered as to the circumstances surrounding the making of the agreement, including the situations of the parties, antecedent negotiations and the purposes of the parties which they expected to realize in the performance of their agreement. Such evidence was not subject to plaintiff's objection that it was in violation of the parol evidence rule. See Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164.

■ Of course, whether the note sued upon lacked consideration, as defendant contends, is a material fact. However, the only question before the trial court in this matter was whether a genuine issue as to this fact was generated by the use of the terms "deliver" or "delivery" in the escrow agreement. The court, after examining the entire record before it and considering the testimony of defendant offered in resistance, concluded there was no genuine issue as to what the parties intended by the use of those terms.

In light of the pronouncement quoted from Sherwood v. Nissen we conclude the trial court was correct in determining

there was no genuine issue as to any material fact generated by the record before it and in entering judgment for plaintiff.

The case is therefore

Affirmed.