Patrick J. McCARNEY, Appellee,

v.

DES MOINES REGISTER AND TRIBUNE COMPANY, Appellant.

No. 2–57145.

Supreme Court of Iowa.

Feb. 18, 1976.

Robert G. Riley and Hedo M. Zacherle, Des Moines, and David P. Poula, Iowa City, for appellant.

Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

We authorized this interlocutory appeal under Rule 332, Rules of Civil Procedure, to consider the right of a public officer to recover from a newspaper for allegedly false and libelous statements published about him.

It is a case of unusual significance because we have not faced a similar issue since *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L. R.2d 1412 was decided in 1964. (We hereafter cite this case as *New York Times.*) That decision announced important changes in the law of libel as it relates to public officials and those who criticize them.

This appeal is before us on defendant's motion for summary judgment, which the trial court overruled. We reverse and remand with instructions that judgment be entered for defendant.

Plaintiff, who had been Chief of Police of Iowa City and was at the time of the alleged libel a police captain, started this action to recover damages against defendant newspaper, Des Moines Register and Tribune Company, alleging it published a false and malicious news story stating he had been indicted by a Johnson County grand jury "in a case involving the death of a prisoner, but the indictment was declared invalid."

Plaintiff immediately filed this written demand for a retraction:

"You are hereby notified that on page 20 of the Des Moines Register for Wednesday morning, March 15, 1972, * * * a certain news publication was made, a copy of which is attached hereto * *. "You are further notified that Patrick McCarney claims that the following statements appearing in said publication:

" 'A Johnson County grand jury indicted McCarney in a case involving the death of a prisoner, but the indictment was declared invalid.'

"are libelous, malicious, false and untrue.

"You are hereby requested to withdraw it and retract said libelous, malicious, false and untrue statements."

In its edition for Friday morning, March 17, 1972, defendant published the following retraction:

"CORRECTION"

"Iowa City, Iowa. The Des Moines Register reported incorrectly Wednesday morning that Iowa City Police Captain Patrick McCarney had been indicted in a case involving the death of a prisoner.

"McCarney was indicted February 17th by a Johnson County grand jury on a charge of assault with intent to commit great bodily injury in connection with the alleged mistreatment of a jail prisoner. The indictment was found to be faulty and was dismissed February 22nd.

"No indictment involving the death of a prisoner ever was returned against McCarney. The Register regrets the error."

Plaintiff's petition alleges the original publication was "entirely false, untrue, libelous, defamatory and was maliciously published." He also asserts the retraction itself contained statements which are "unfounded, false and untrue in that the plaintiff was never indicted by a grand jury."

He says, too, the retraction was insufficient because "the title of said article, *i. e.,* 'Correction' does not direct the attention of the reader to the subject matter as in the original article."

Defendant filed an answer admitting the publication of the original story and admit-

ting it was erroneous. The answer denied malice, asserting the publication was made in good faith in the belief that it was true and for justifiable purposes. It further alleged defendant was entitled to publish the statements as an exercise of its freedom of speech and of the press guaranteed by the 1st and 14th Amendments to the Constitution of the United States.

Plaintiff submitted seventeen interrogatories, which defendant duly answered. Thereafter, defendant filed its motion for summary judgment, supported by affidavit, alleging the pleadings and supporting material "show there to be no genuine issue as to the material facts necessary to establish plaintiff's cause of action and that defendant is entitled to a judgment herein as a matter of law."

Defendant's motion was filed under Rule 237(b) and (c), R.C.P., the pertinent portions of which are here set out:

> "(b) *For defending party.* A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

> "(c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * *"

When, as here, such a motion is supported by affidavit, the "adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 237(e), R.C.P.

In the case before us plaintiff did not file any countering affidavits; neither did he introduce any depositions or oral testimony, as the rule permits, at the hearing on defendant's motion. *See Davis v. Travelers*

*Insurance Company,* 196 N.W.2d 526, 529 (Iowa 1972); *Frudden Lumber Company v. Clifton,* 183 N.W.2d 201, 204 (1971); *Hanna v. State Liquor Control Commission,* 179 N.W.2d 374, 375 (Iowa 1970).

While it is true the information before the court on a motion for summary judgment is to be viewed in the light most favorable to the person against whom the motion is filed, nevertheless that person must counter the evidentiary material submitted in support of the motions. Rule 237(e), R.C.P.; *Schulte v. Mauer,* 219 N.W.2d 496, 500 (Iowa 1974); *Iowa Civil Rights Comm'n. v. Massey-Ferguson, Inc.,* 207 N.W.2d 5, 8 (Iowa 1973); *Davis v. Comito,* 204 N.W.2d 607, 611–612 (Iowa 1973); *Mead v. Lane,* 203 N.W.2d 305, 308 (Iowa 1972); *Prior v. Rathjen,* 199 N.W.2d 327, 330 (Iowa 1972); *Bauer v. Stern Finance Co.,* 169 N.W.2d 850, 853 (Iowa 1969).

Of course, a party may elect to stand on the record as made by his opponent but he must then succeed, if he succeeds at all, not on the strength of his own case, for he has made none, but on the weakness of his adversary's. *Mead v. Lane, supra,* 203 N.W.2d at 308; Blackburn, *Thirty Years of Motion Practice Under the Iowa Rules,* 21 Drake L.Rev. 447, 475 (1972).

It is this position in which plaintiff now finds himself. It is in this manner that we must consider defendant's motion. *See Daboll v. Hoden,* 222 N.W.2d 727, 734–735 (Iowa 1974); *Goodwin v. City of Bloomfield,* 203 N.W.2d 582, 588 (Iowa 1973).

Plaintiff's petition alleges defendant's news story was maliciously false in erroneously stating he had been indicted in connection with a case involving the death of a prisoner and in referring to an indictment at all since it had been invalidated before the story in question was published. As already noted, plaintiff also claims the purported retraction was itself simply a repetition of part of the libelous matter.

As provided by Rule 237, we consider defendant's right to summary judgment on the pleadings, answers to interrogatories, and affidavits. Standing unrefuted, they establish the following circumstances under which the disputed publication occurred:

The original news story reached defendant's newsroom via the Associated Press wire service. It contained a statement that plaintiff was charged by grand jury indictment with *assault* involving a prisoner. This news item was assigned to one of defendant's employees to be edited and readied for publication. In doing so, the employee, confusing the story with another pending investigation involving police and jail prisoners in Council Bluffs, changed the story to incorrectly state the indictment returned against plaintiff involved the *death* of a prisoner. The error was not discovered until the next day. The correction already referred to followed.

Defendant admits the error occurred because its employee "erroneously confused" plaintiff with another police officer involved in another investigation in another town. It also admitted no investigation was made to establish the accuracy of the story, although reference to defendant's own files would have dispelled any confusion. Defendant further conceded in its answers to interrogatories that it has no rules, regulations, standards, policies or procedures which required verification of the facts of the story before it was published.

It is beyond dispute that the news item was erroneous as the result of defendant's negligence. Defendant admits as much but says negligence affords no basis for recovery. Relying exclusively upon the *New York Times* doctrine, defendant argues there is no genuine issue of fact as to actual malice, without which no relief may be had.

This brings us, then, to a discussion of *New York Times* and its effect on our libel law relating to public officials.

Before *New York Times* was decided, defendant's demand for summary judgment could not have prevailed under our law.

*See Taylor v. Hungerford*, 205 Iowa 1146, 1148–1149, 217 N.W. 83, 84 (1927); *Salinger v. Cowles*, 195 Iowa 873, 888–890, 191 N.W. 167, 174 (1922); *Ott v. Murphy*, 160 Iowa 730, 738–739, 141 N.W. 463, 467 (1913).

We did not then make proof of actual malice a necessary element of recovery by a libeled public official. However, *New York Times* decided such a rule violated constitutional rights of free speech and freedom of the press under the 1st and 14th Amendments. Our earlier cases cited in the preceding paragraph are now overruled to the extent they conflict with this opinion.

In *New York Times*, the Supreme Court of the United States considered the validity of a judgment rendered in favor of a public official against the New York Times Company and others by the Alabama Supreme Court for libelous statements made against a city commissioner of public affairs concerning alleged mistreatment of black students. The judgments were reversed.

In considering the case, the Supreme Court made the following statements:

"We are required in this case to determine for the first time the extent to which the constitutional protections for speech and press limit a State's power to award damages in a libel action brought by a public official against critics of his official conduct." 376 U.S. at 256, 84 S.Ct. at 713, 11 L.Ed.2d at 692.

"The constitutional guaranties require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' —that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279, 84 S.Ct. at 726, 11 L.Ed.2d at 706.

"We hold today that the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the

rule requiring proof of actual malice is applicable." 376 U.S. at 283, 84 S.Ct. at 727, 11 L.Ed.2d at 708.

We must now decide for the first time the effect of the *New York Times* rule on our law of libel as it concerns public officials. As shown by the foregoing quotations, the rule is applicable to state courts.

The rationale underlying the *New York Times* doctrine lies in our profound national commitment to vigorous and robust debate over matters of public concern and to our insistence that the free and unfettered exchange of ideas is necessary to protect the public's right to know. To promote that ideal, the publishing media is afforded a buffer zone to protect it from the chilling effect which might otherwise cast over it a "pall of fear and timidity" by raising the spectre of numerous libel actions. *New York Times*, 376 U.S. at 270, 271–272, 278–279, 281, 84 S.Ct. at 720, 721, 725, 726–727, 11 L.Ed.2d at 700, 701, 705–706, 707.

The avowed purpose of *New York Times* is to insulate from liability those who undertake to comment on the conduct of public officials in the discharge of their official duties unless actual malice is shown.

■ As there used, actual malice means the statement is made with knowledge it is false or with reckless disregard for its truth or falsity. We do not understand plaintiff to claim defendant knew the story was false. We therefore must decide if the statement was made with reckless disregard of its truth or falsity. The authorities are against plaintiff.

"Reckless disregard" has been held to mean a "high degree of awareness of probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964). It has also been said some suspicion as to the falsity of the statement must be shown to establish "reckless disregard." *Time, Inc. v. McLaney,* 406 F.2d 565, 573 (5th Cir.), *cert. denied* 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969). "Serious doubt" as to the truth of the statements published was required in the case of *St.*

*Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968), where the court said:

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

*See Time, Inc. v. Pape,* 401 U.S. 279, 291–292, 91 S.Ct. 633, 640, 28 L.Ed.2d 45, 54–55 (1971), *rehearing denied* 401 U.S. 1015, 91 S.Ct. 1248, 28 L.Ed.2d 552; *see also* Annot. 20 A.L.R.3d 988 (1969), and Restatement (Second) of Torts, § 580A, Comment d (Tentative Draft # 21, 1975).

■ Actual antagonism or contempt has been held insufficient to show malice. *Pauling v. Globe-Democrat Publishing Co.,* 362 F.2d 188, 198 (8th Cir. 1966), *cert. denied* 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347. So has intent to inflict harm. There must be an intent to inflict harm *through falsehood. Henry v. Collins,* 380 U.S. 356, 357, 85 S.Ct. 992, 993, 13 L.Ed.2d 892, 893 (1965).

■ There is a complete absence of any facts in the record before us from which a finding of actual malice could be made. Defendant's explanation of how the error occurred stands undisputed. It shows negligence, but no more than that. Under the authorities heretofore cited there is no premise upon which plaintiff could recover. Defendant did not know the story was false nor did it "suspect" it was. Neither did it entertain "serious doubts" of its truth. Quite the contrary, defendant's employee was so certain of his own facts that he changed the Associated Press wire story because he thought *it* was erroneous. We recognize the trial court considered this alteration of the wire story by defendant's employee as significant in considering actual malice. We do not believe this circumstance helps plaintiff.

Perhaps this is the best time to discuss plaintiff's argument defendant's supporting affidavit contains hearsay and violates Rule 237(e) which provides in part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

 The affidavit was made by Richard C. Kline, assistant managing editor of defendant corporation. While some statements in the affidavit are subject to the hearsay objection, most of Kline's recitation deals with newspaper practices and procedures governing the receipt, editing, and publication of news stories. He was qualified to state such matters and clearly would have been allowed to testify concerning them. In any event virtually all of the affidavit was repetitive of information contained in the answers to interrogatories. While Kline may not have been able to testify to all such matters, other employees of defendant would have been. Furthermore, plaintiff's failure to raise the hearsay objection in the trial court precludes reliance on it here. *Sallee v. Routsen,* 247 Iowa 1220, 1222–1223, 78 N.W.2d 516, 517–518 (1956).

Taken together, the answers to interrogatories and the affidavit of Mr. Kline, in the absence of controverting evidence by plaintiff, establish the facts upon which our conclusion rests.

We hold the record before us shows there is no genuine issue of material fact, and defendant was therefore entitled to summary judgment. This has been the universal holding of other courts under similar circumstances.

The matter is stated this way in *Cerrito v. Time, Inc.,* 302 F.Supp. 1071, 1075–1076 (D.C.Cal.1969), aff'd 449 F.2d 306 (9th Cir. 1971):

"Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has purposely been given the heavy burden of proving actual malice * * *. In order to prove actual malice, plaintiff must make an affirmative showing of facts from which defendant's probable knowledge of falsity may be constitutionally sustained * * *. When it has been established * * * that he cannot meet [the burden], the First Amendment makes it incumbent upon the Court to grant defendant's motion for summary judgment."

Among the cases adopting the *Cerrito* rationale, either in whole or in part, are the following: *Treutler v. Meredith Corp.,* 455 F.2d 255, 259 (8th Cir. 1972); *Gospel Spreading Church v. Johnson Publishing Co.,* 147 U.S.App.D.C. 207, 454 F.2d 1050, 1051 (1971); *Time, Inc. v. McLaney, supra,* 406 F.2d at 573; *United Medical Laboratories v. Columbia Broadcasting System,* 404 F.2d 706, 712–714 (9th Cir. 1968), cert. denied 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); *Thompson v. Evening Star Newspaper Co.,* 394 F.2d 774, 777, cert. denied 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968); *Washington Post v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965, 971 (1966), cert. denied 385 U.S. 1101, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *Carey v. Hume,* 390 F.Supp. 1026, 1028, n. 2 (D.C.D.C.1975); *Hahn v. Andrello,* 44 A.D.2d 501, 355 N.Y. S.2d 850, 854 (1974); *AAFCO Heating and Air Conditioning Co. v. Northwest Publications, Inc.,* 321 N.E.2d 580, 589–591 (Ind. 1974); *Gallman v. Carnes,* 254 Ark. 987, 497 S.W.2d 47, 50 (1973); *Washington v. World Publishing Co.,* 506 P.2d 913, 916–919 (Okl.

1973); *Schwartz v. Time, Inc.,* 71 Misc.2d 769, 337 N.Y.S.2d 125, 131 (1972); *Drye v. Mansfield Journal Corp.,* 32 Ohio Misc. 70, 288 N.E.2d 856, 859–860 (1972); *Chase v. Daily Record, Inc.,* 8 Wash.App. 1, 503 P.2d 1103, 1106 (1972); *Tait v. King Broadcasting Co.,* 1 Wash.App. 250, 460 P.2d 307, 311 (1969). *See also* Restatement (Second) of Torts, §§ 613, 617 (Tentative Draft # 21, 1975).

Our holding is, of course, limited to actions brought by public officials to recover for libelous statements concerning their official conduct. We are not now concerned with what changes may have been wrought on the law of libel generally by *Sullivan* and, more particularly, by the later case of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). However, for an interesting discussion of the implications of those and related opinions on the right of non-public figures to recover for libelous statements, *see Troman v. Kingsly Wood, et al.,* 340 N.E.2d 292 (Illinois 1975).

The judgment is reversed and remanded with instructions that summary judgment be entered for defendant.

Reversed and remanded.

MOORE, C. J., and REES and McCORMICK, JJ. concur.

REYNOLDSON, J., concurs specially.

REYNOLDSON, Justice (concurring specially)

I concur specially, motivated by an apprehension the overall impact of the majority's language may be misinterpreted as it relates to our rules concerning summary judgment.

I. Rule 237(e), Rules of Civil Procedure provides in relevant part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

This rule has been enforced in our decisions. *A.T. & T. Co. v. Dubuque Communications,* 231 N.W.2d 12, 14 (Iowa 1975) ("We have held that language [in R.C.P. 237(e)] requires movant to establish by evidentiary matter the absence of a genuine issue and this is so even though no adequate resistance is made"); *Gruener v. City of Cedar Falls,* 189 N.W.2d 577, 581 (Iowa 1971) ("We doubt that plaintiff's resistance contains sufficient specific facts constituting admissible evidence to be an adequate response").

Although the majority's opinion is replete with language relating to defendant's knowledge or suspicions or serious doubts, it is of course understood the corporate defendant, being an impersonal entity, could be guilty of proceeding with knowledge a story was false or with reckless disregard of whether it was false only through the imputed acts of its employee or employees directly responsible. See *Dunshee v. Standard Oil Co.,* 165 Iowa 625, 633, 146 N.W. 830, 834 (1914); *White v. Textbook Co.,* 150 Iowa 27, 31, 129 N.W. 338, 340 (1911); 19 C.J.S. Corporations § 1280 pp. 957–960. If the publishing corporation were to be held responsible for its knowledge generally, then it could be charged with the information in its files, a concept rejected by the United States Supreme Court in *New York Times v. Sullivan,* 376 U.S. 254, 287, 84 S.Ct. 710, 730, 11 L.Ed.2d 686, 710–711 (1964).

In this instance defendant urges one employee was directly responsible for the alleged mistake and publication of the libelous news story. That employee's version of the incident, his knowledge and mental processes, were before trial court on submission of the motion only through the affidavit of a supervisor who made an "investigation". It is plain this evidence would be hearsay and inadmissible if proper objection had been urged below. Defendant does not assert here its evidence met the requirements of R.C.P. 237(e), rather it urges we may consider it even though it was hearsay because defendant made no objection be-

low, citing *Sallee v. Routson,* 247 Iowa 1220, 1222–1223, 78 N.W.2d 516, 517–518 (1956). In my view, this position is sound. Of course, had objection been made, defendant may well have submitted an affidavit which would have met the rule requirement.

II. To me yet another danger of misinterpretation lurks in our disposition of this appeal. The gist of actual malice is almost identical whether defined by the United States Supreme Court, *Times,* supra, 376 U.S. at 279–280, 84 S.Ct. at 726, 11 L.Ed.2d at 706 ("* * * statement * * * made * * * with knowledge that it was false or with reckless disregard of whether it was false or not") or by this court, *Vojak v. Jensen,* 161 N.W.2d 100, 107 (Iowa 1968) ("Actual malice is defined as ill-will, hatred or desire to do another harm. It may also result from a reckless or wanton disregard of the rights of others"). Obviously a vital element in the ordinary case is the "state of mind" of the person or persons directly responsible. *Times,* supra, 376 U.S. at 287, 84 S.Ct. at 730, 11 L.Ed.2d at 710.

For the same reasons negligence cases ordinarily are not susceptible of summary adjudication, *Daboll v. Hoden,* 222 N.W.2d 727 (Iowa 1974), claimants damaged by libelous publications should be summarily deprived of their day in court only after the most rigid application of our rule that all material properly before the court must be viewed in the light most favorable to the party against whom the motion for summary judgment is made. *Steinbach v. Continental Western Insurance Company,* 237 N.W.2d 780 (Iowa 1976); *Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). A summary adjudication turning on the subjective state of mind of a person responsible for an otherwise libelous statement, proved by the post-publication affidavit of that individual, would come into inevitable tension with our long-standing rule a court and jury are not bound to accept testimony as true because it is not contradicted. *Daboll v. Hoden,* supra, 222 N.W.2d at 736; *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 643 (Iowa 1969). Of course, even where facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f)(17), R.C.P.; *Ruby v. Easton,* 207 N.W.2d 10, 15 (Iowa 1973).

In this instance the other circumstances, including the retraction, coupled with the objective explanation placed in the record without objection may merit administrating a coup de grace to plaintiff's cause of action at a pre-trial stage.