Marshall E. Livingston, J.
This is a motion by defendant for summary judgment to dismiss the plaintiff’s complaint in a libel action.
There were before me on the motion the verified complaint and answer, defendant’s interrogatories, and the plaintiff’s answers thereto. The complaint also contained the three news articles which are the basis of the suit. Two contained the misleading information and inferences, conceded to be libelous per se for the purpose of this motion. The third article, published the next day by the defendant, was a retraction of the previous stories.
In substance, the news accounts on March 9,1971 in the Democrat d Chronicle and in the Times Union reported that the plaintiff and one Nichols “ face court action in a Sheriff’s Department probe of a series of alleged thefts as long as two years ago ”. The articles then detailed the part Nichols was said to have played in several prior burglaries and recounted how, in a search of his premises with a warrant, guns and other goods were recovered. The next sentence .said, “ Officers said the investigation led also to Vinci.”
The retraction printed March 10, 1971, stated, “A story in some editions yesterday may have inadvertently suggested that Vinci was charged in connection with a burglary probe. That isn’t the case, he is charged only in connection with the check.”
Plaintiff thereafter pleaded guilty to issuing a bad check (Penal Law, § 190.05), a Class B misdemeanor, reduced from grand larceny in the third degree (Penal Law, §§ 155.05,155.30), a Class E felony. The plea came as the result of the incident in early March, 1971, which culminated in the news stories libelously linking him with Nichols as part of a burglary ring. The headlines referred to “ two geneses men accused op thepts ” and 11 GENESEE PAIR HELD IN THEPTS ”.
The libel the plaintiff charges here, as shown by his answers to defendant’s interrogatories and his brief, is “ malice implied by law” arising by reason of carelessness and negligence in reporting the story, which was false and libelous per se. Malice implied by law does not impute motives of ill will.
*148 Actual malice is not charged here by the plaintiff. In order for there to be a claim of actual malice, the pleadings must set forth clear and convincing allegations that the defamatory falsehood was published with the defendant’s knowledge that it was false or that it was published with a reckless disregard of whether or not it was false. In short, actual malice penetrates the barrier of qualified privilege, and in order to do so, the publication must be made either with knowing or with reckless falsity. No such claim is made here.
The qualified privilege of the news media to publish or broadcast by radio or television has been the subject of several decisions which have expanded the concept of constitutional limitations on State libel laws.
Prior to 1964 the media could comment on the conduct of public officials with immunity, provided the comment was based on true facts which fairly justified the comment. A defendant thus had the burden of proof to establish such defense in a libel suit.
In New York Times Co. v. Sullivan (376 U. S. 254 [1964]) the Supreme Court abolished the prior rule and held that inaccurate reporting or unjustified comments relating to public officials were immune from legal liability for libel and were “ qualifiedly privileged ’ ’, unless the material was published with knowledge of or reckless disregard for the falsity of the statements. In addition the court held that plaintiff must bear the burden of proof upon the issue of “ actual malice ”.
The Supreme Court said in New York Times Co. v. Sullivan (376 U. S. 254, 279-280, supra): “ The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘ actual malice ’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.”
Again (p. 283), the court said: “ We hold today that the Constitution delimits a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct * * . * [T]he rule requiring proof of actual malice is applicable.”
A few years later in Curtis Pub. Co. v. Butts (388 U. S. 130 [1967]) !the court extended the “ qualified privilege ” immunity anonunced in the Times case {supra) to “ public figures •
The next time the Supreme Court considered the application of First Amendment guarantees of freedom of the press and its *149 concomitant “qualified privilege” was Rosenbloom v. Metromedia (403 U. S. 29 [1971]).
Rosenbloom (supra) presented the issue of whether the qualified privilege rule of the Times case (supra), as expanded by Rutts (supra), applied in a libel action brought not by a “ public official ” or a “ public figure ” should include a “ private person ’ ’ for a libelous newscast concerning his involvement in an event of public or general interest.
The Supreme Court so extended the “ qualified privilege ” rule, provided the comment or publication is not made with “ actual malice ”, that is with “ knowing or reckless falsity ”, to a private person involved in a matter of public or general concern, and the court said (Rosenbloom v. Metromedia, 403 U. S. 29, supra, pp. 43-45): “ If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not ‘ voluntarily ’ choose to become involved. The public’s primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant’s prior anonymity or notoriety * * * We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern,'without regard to whether the persons involved are famous or anonymous * * *
“It is clear that there has emerged from our cases decided since New York Times the concept that the First Amendment’s impact upon state libel laws derives not so much from whether the [libeled person] is a ‘ public official,’ 1 public figure,’ or ‘ private individual, ’ as it derives from the question whether the allegedly defamatory publication concerns a matter of public or general interest * * * In that circumstance we think the time has come forthrightly to announce that the determinant whether the First' Amendment applies to state libel actions is whether the utterance involved concerns an issue of public or general concern, albeit leaving the delineation of the reach of that term to future cases. ” (italics supplied).
The court went on (p. 52): “ We thus hold that a libel action * * * by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event ~of public or general concern may be sustained only upon clear and convincing proof that the defamatory false *150 hood was published with knowledge that it was false or with reckless disregard of whether it was false or not. Calculated falsehood, of course, falls outside ‘ the fruitful exercise of the right of free speech.’ ” (italics supplied).
In this case plaintiff in his brief points out that he is an anonymous citizen who cannot be heard in defense of the libelous publication of Gannett and that his only forum is this action for damages. That may well be, but Rosenbloom v. Metromedia (403 U. S. 29, supra, p. 52) substantially answers plaintiff’s argument in footnote 18 as follows: “At oral argument petitioner argued that ‘ the little man can’t show actual malice. How can George Bosenbloom show that there was actual malice in Metromedia? They never heard of him before.’ Tr. of Oral Arg., Dec. 8,1970, p. 39. But ill will toward the plaintiff, or bad motive, are not elements of the New York Times standard. That standard requires only that the plaintiff prove knowing or reckless falsity. That burden, and no more, is the plaintiff’s whether 1 public official,’ 1 public figure,’ or ‘ little man.’ It may be that jury instructions that are couched only in terms of knowing or reckless falsity, and omit reference to ‘ actual malice, ’ would further a proper application of the New York Times standard to the evidence.”
Thus the plaintiff may have his forum, but in order to reach it, he must allege and show “ actual malice ”, on which issue he has the burden of proof.
Plaintiff’s reliance on the failure of Gannett to use reasonable care in publication of the libel is misplaced. When asked for acts or omissions upon which he would rely to establish negligence on the part of Gannett, the plaintiff replied that such evidence was not available but would be supplied after discovery proceedings were completed.
The difficulty is that negligence or failure to use reasonable care is not available to plaintiff in a libel action. Rosenbloom v. Metromedia (403 U. S. 29, supra, p. 50) sets forth the rule as follows1: “ In this case, the vital needs of freedom of the press and freedom of speech persuade us that allowing private citizens to obtain damage judgments on the basis of a jury determination that a publisher probably failed to use reasonable care would not provide adequate ‘ breathing space ’ for these great freedoms. ¡Reasonable care is an ‘ elusive standard ’ which ‘ would place on the press the intolerable burden of guessing how a jury might assess the reasonableness of steps taken by it to verify the accuracy of every reference to a name, picture or portrait.’ ”
*151 Plaintiff also urges that the article concerning Nichols and him was not a matter of “ public or general interest or concern”. The public always has had a vital interest in proper enforcement of its criminal laws. Certainly an apprehension for a series of burglaries, recovery of stolen goods and a charge of larceny in the third degree in connection with a bad check, albeit the article connected the plaintiff erroneously as a part of the whole operation, is a matter of general interest, if not concern, because the alleged perpetrators were apprehended. I can see no difference than the situation in Mr. Rosenbloom’s case where the matter involved the characterization of his business as “ the smut literature racket ” and of him as one of the “ girlie-book peddlers ” (Rosenbloom v. Metromedia, 403 U. S. 29, supra, p. 57).
Finally in Kent v. City of Buffalo (29 N Y 2d 818 [1971]), the Court of Appeals unanimously reversed the Appellate Division, Fourth Department, in a ease somewhat similar to the case at bar. In its memorandum the court said at page 819: “ We approve the rationale of the dissenting opinion at the Appellate Division and write only to note that upon application of the rule of Rosenbloom v. Metromedia (403 U. S. 29, 52), decided subsequent to the Appellate Division decision, we find the evidence too insubstantial to constitute ‘ clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not.’ ”
For the reasons above stated, I hold that the arrest of plaintiff for what ultimately resulted in a plea of passing a bad check was of public or general interest. The news articles linking him in a burglary ring, although false and libelous, are not claimed td have been activated by actual malice or “ in terms of knowing or reckless falsity ” (Rosenbloom v. Metromedia, supra, p. 52, n. 18). Therefore, the claim of negligence, which produced the “ malice implied by law ”, is insufficient to support this action.
The complaint is dismissed, without costs.