Gael E. Scacchetti, Je., J.
The matter now before the court is a motion by the defendant Gannett Co., Inc. for summary judgment dismissing the complaint of the plaintiff herein for failure to state a cause of action as a .matter of law. The facts of the case, briefly stated, are that on 'September 16,1971, there appeared in one of defendant Gannett Co., Inc.’s newspapers, the Democrat & Chronicle, an article referring to the plaintiff herein. The article has been submitted to this court as both part of the complaint, and the answer of the defendant. Basically, the article dealt with properties allegedly owned by the plaintiff which are the subject matter of a disputed land transaction with groups primarily interested in rehabilitation of landmarks in and around the City of Eochester.
Both the .parties herein have submitted their pleadings and have presented oral arguments. In addition thereto, ample ■opportunity was afforded to allow legal briefs to be filed to assist the court. 'Suffice it to say, matters such as this are easily decided without grave consideration for the consequences which may result to all concerned. Especially true is such a fact in the case now before the court. The remedy sought by 'the defendant is such that it would preclude the plaintiff from advancing further ,as to his cause and (would, in the first instance, wipe out any remedial sanction of the court. Bearing this in mind, it can therefore be seen why it is extremely necessary for this court to expound in detail as to the law revolving around the case.
The plaintiff, pro se, attempts .to oversimplify the questions before the court .by stating that, although there are conclusions of law, which the court must rule on, there are also questions of fact which must be left to a jury to determine. For this postulation the plaintiff states in his brief that whether the printed matter was for public concern is a question of fact. No cases are cited by him to show that such a question of fact may be even reached without first resolving .preliminary legal hurdles necessary to entertaining that matter, which shall be discussed at a later point herein.
Let us first discuss whether the question of “ public concern ” is such as to create a question of fact or whether as a matter of law the court may dispose of it on the pleadings and arguments of counsel. In the now leading case of Rosenbloom v. Metromedia (403 U. S. 29) a determination was reached by the court that the question of “ public ” ¡or “ general ” interest is a matter of law land must be resolved by the court. The court stated in Rosenbloom v. Metromedia (supra, pp. 43-44) as *346 follows: “ We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous, or anonymous.” (Emphasis added.)
Here the court is setting forth the guideline by which all other courts shall resolve, as a matter of law, the question of public concern. True, the dictate of the court is rather broad and sweeping, but .suffice it to say that there is a clear intent that subject matters reported by the news media will be allowed discussion, frankly and openly and not subject to censure or fear of reprisal because of selection process. To allow any such censure in the first instance would be tantamount to a gross, denial of the rights afforded by the First Amendment, and as such would allow sitting Magistrates, without more, to become unimpeachable censors, which this court would neither relish nor condone.
There is, however, one saving factor in the area of whether “ public concern ” is involved and .that is whether the matter is reported with actual malice. The court in the Rosenbloom case makes this clear (p. 62): We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was .false or not.”
As stated, there must be ;a .showing of clear and convincing proof ” .that it was published with a knowledge that it was false or with reckless disregard of same. Nowhere in the plaintiff’s complaint does he allege any such concept that the defendant knew that the items were false or that there was a reckless disregard by the defendant of .the falsity of same. Even the plaintiff’s answers to the defendant’s interrogatories do not show the actual falsity of items appearing in the allegedly offensive article, but are mere conclusions with no foundation of fact; hardly a showing of knowledge of falsity. Concluding the argument regarding the plaintiff’s position of whether the article was of “ public, concern ”, the court states that the subject matter of newspaper articles, without a showing of falsity and malice in reporting, shall ibe deemed to be of ‘ ‘ public concern ” as propounded by the editorial board of the defendant company. It is interesting to note on this point that even the *347 plaintiff admits that the subject matter of the news article had previously been written about by the defendant, and that this article was nothing more than an elongation of same.
Also, note the statement of the court in Rosenbloom v. Metromedia (supra, p. 48): “ Thus, the idea that certain 1 public ’ figures have voluntarily exposed their entire lives to public inspection, while private individuals have kept theirs carefully shrouded from public view is, at best, a legal fiction. In any event, such a distinction could easily produce the paradoxical result of1 dampening discussion of issues of public or general concern because they happen to involve private citizens while extending constitutional encouragement to discussion of aspects of the lives of ‘ public figures ’ that are not in the area of public or general concern. ’ ’
Other cases, regarding 6 ‘ public concern ’ ’ of private individuals are as follows: Schwartz v. Time, Inc. (71 Misc 2d 769 [Spec. Term, New York County, 1972]); Steak Bit of Westbury v. Newsday, Inc. (70 Misc 2d 437 [Spec. Term, Nassau County, 1972]); Vinci v. Gannett Co. (71 Misc 2d 146 [Spec. Term, Monroe County, 1972]).
The next main, and probably more important point to consider, is whether the article is of such a ‘ ‘ public or general interest or concern ” as to receive the qualified privilege stated in defendant’s answer as an affirmative defense.
The position of the defendant is clear, and that is that the public has :a right to know of the developments relating to realty in all parts of the city and more particularly the segment of it referred to as the Third Ward. There can be no doubt from a perusal of all the pleadings now before the court, including the interrogatories and answers, and the examination by plaintiff of the reporter for the defendant, Gail Meadows, that this subject matter was not exclusive to the article complained of by the plaintiff, but had been a recurring news item reported in defendant’s paper, the Democrat <■& Shromcle.
If this were so, and it appears that it was, then the ‘ ‘ public ’ ’ information aspect of the article complained of is nothing but an elongation resulting from investigative reporting.
The Bosenbloom case as stated (supra) draws a veil around a defendant of the type in the instant case, and cloaks it with an aura of immunity not heretofore enjoyed. The cloak, however, becomes a tattered web of meaningless fabric when it is exposed to the dissipating element of “ wanton, careless and reckless disregard for the truth ’ ’ and malicious intolerance to the rights *348 of others. In the latter instance the garb of immunity now becomes the exposure of wrongdoing. However, to accomplish this, as stated ¡previously, the plaintiff must successfully allege and prove to the court, as a contra-measure, that the affirmative defense of qualified privilege laid down in Rosenbloom (supra), and New York Times Co. v. Sullivan (376 U. S. 254) is not available. This the plaintiff has not succeeded in doing.
Nowhere in the written papers of the plaintiff or in his oral argument does he contravene or refute the defense of qualified privilege alleged and shown by the defendant. The fact that plaintiff alleges he is a private citizen and that the subject matter as relating to him is not for publication is not of legal consequence, but merely one of- personal attitude. Here again we refer to the Rosenbloom v. Metromedia case (403 U. S. 29, 43, supra): “ If a matter is a .subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 1 voluntarily ’ choose to become involved. The public’s primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant’s prior anonymity or notoriety.”
Plaintiff attempts to show malice on the part of defendant, by stating a showing of public records could have disclosed some evidence in contradiction to the article as written, as well as errors in reporting. There is only one reference to any public records in the article, but ¡without a showing of how that information came to the hands of the reporter for defendant, there is no showing of reckless disregard on the part of1 the defendant by the plaintiff. On this point the court in Rosenbloom v. Metromedia (supra, p. 56) states: “ But our eases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact, entertained serious doubts as to the truth of his publication. St. Amant v. Thompson, 390 U. S., at 781.” (Italics supplied.)
The court would digress briefly to point out to both the litigants in this case that the reporters of any news media must collect data .submitted to them by various .public or private sources. It has .long been held not only by this court, but by many courts, that said private sources in almost all instances are protected from forced disclosure, but reporters being human beings are subject to the same frailties and errors as are basic *349 to all individuals and may leave room, for unintentional error. This has been also a basic frailty committed to all of the news media since the concept and formal ratification of the Constitution of the 'United iStates was f ormed. This does not imply that we must of necessity “ throw the baby out with the wash ” so as to safeguard against human frailty and error. It is more important that the news media frame and contain within themselves without unnecessary outside intervention the ability freely and honestly to report those items occurring in our daily life which give vent to public knowledge and thereby concern. This court’s attitude regarding the First Amendment’s right as afforded to the news media is more adequately explained in the case of Rosenbloom v. Metromedia (supra, p. 51), where the court states as follows:
“We .are aware that the press has, on occasion, grossly abused the freedom it is given by the Constitution. All must deplore such excesses. In an ideal world, the responsibility of the press would match the freedom and public trust given it. But from the earliest days of our history, this free society, dependent as it is for its survival .upon a vigorous free press, has tolerated some abuse. In 1799, James Madison made the point in quoting (and adopting) John Marshall’s answer to Talleyrand’s complaints about American newspapers, American State Papers, 2 Foreign Relations 196 (U. S. Cong. 1832):
‘ “ Among those principles deemed sacred in America, among those sacred rights considered as forming the bulwark of their liberty, which the Government contemplates with awful reverence and would approach only with the most cautious circumspection, there is no one of which the importance is more deeply impressed on the public mind than the liberty of the press. That this liberty is often carried to excess; that it has sometimes degenerated into licentiousness, is seen and lamented, but the remedy has not yet been discovered. Perhaps it is cm evil inseparable from the good with which it is allied; perhaps it is a shoot which cannot be stripped from the stalk without wounding vitally the plant from which it is torn. However desirable ithose measures might be which might correct without enslaving the press, they have never yet been devised in America.” ’ 6 Writings of James Madison, 1790-1802, p. 336 (G. Hunt ed. 1906) (emphasis in original).”
From an entire reading of all the papers submitted in this case and the oral argument had thereon, there is one thing which is quite evident and that is that the plaintiff suffered some harm, albeit personal only with 'himself. The fact remains, *350 however, that it is not such a harm, for which redress can be found in the courts. Whether the article was accurate or not is of no consequence to the ultimate decision of this court. There must be a .showing by the plaintiff by 11 clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not ” (Rosenbloom v. Metromedia, 403 U. S. 29, 52). The plaintiff has failed in his test and therefore the motion of defendant for summary judgment dismissing the complaint of plaintiff is granted.