Marshall E. Livingston, J.
On July 10, 1972 a 12-year-old boy delivering papers in the Town of Gates was accosted by three other boys of about the same age. In the ensuing scuffle the paper boy was knocked off his bicycle, which was damaged, and injured his knee.
Defendant owns and publishes a weekly newspaper in the Town of Gates, and as a regular feature, the paper carries an article entitled “ Gates Police News In the issue of July 19, 1972, the column contained several paragraphs reporting police matters, one of which is the subject of this libel lawsuit.
Defendant moves for summary judgment, and plaintiffs cross-move to strike defendant’s affirmative defense of qualified privilege.
The third paragraph of the column in question read as follows: “ A 12-year old Gates boy, delivering papers on his evening paper route, was assaulted by a 12-year old negro youth, and a white youth, according to police reports. The incident occurred in the Beahan Road area. The newspaper boy suffered an injured knee. Police reports indicate the two boys who attacked him threatened the newsboy, and told him if he told his father about what happened they would kill him; they also demanded $5.00 from the newsboy, the report states, for not beating him up. The two youths now face family court action.”
*839 Plaintiffs claim that the case of Gertz v. Welch, Inc. (418 U. S. 323), decided June 25,1974 by the United States Supreme Court, preserved to the infant plaintiff, Gary Jones, as a private person, an action for defamation against the defendant.
Prior to Gertz (supra), the case of New York Times Co. v. Sullivan (376 U. S. 254) held that where “ public officials ” were involved as libelees, they must show “ actual malice ” on the part of the media, i.e., clear and convincing proof that the publisher knew the statement published was false or published the defamatory material with a reckless disregard as to whether it was true or false.
Then in 1967 Curtis Pub. Co. v. Butts (388 U. S. 130) extended the Times standard required of “ public officials ” to “ public figures ”. In 1971 came Rosenbloom v. Metromedia (403 U. S. 29) in which a plurality of the court held that as long as the matter reported or commented upon was of “ public interest and concern ” the publisher had a qualified privilege and constitutional protection under the First Amendment, unless the one libeled (even if a private person) could meet the Times standard of proving “ actual malice ”.
The distinction between Gertz (supra) and the case at bar is that Mr. Gertz was involuntarily cast as a principal into the libelous article when he was only the attorney for the estate of the deceased infant victim in a civil action against the convicted policeman. He was not involved in the criminal case out of which the libelous article arose.
In this connection Gertz v. Robert Welch, Inc. (418 U. S. 323, 337, supra), had this to say concerning the Rosenbloom case: “ Thus, under the plurality opinion, a private citizen involuntarily associated with a matter of general interest has no recourse for injury to his reputation unless he can satisfy the demanding requirements of the New York Times test.” (Emphasis supplied.)
The Gertz opinion holds in this regard (pp. 345-346) as follows:
“ Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery. For these reasons we conclude that the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual. The extension of the New York Times test proposed by the Rosenbloom plurality would abridge this legitimate state interest to a degree that we *840 find unacceptable * * * Nor does the Constitution require us to draw so thin a line between the drastic alternatives of the New York Times privilege and the common law of strict liability for defamatory error. The * public or general interest ’ test for determining the applicability of the New York Times standard to private defamation actions inadequately, serves both of the competing values at stake. On the one hand, a private individual whose reputation is injured by defamatory falsehood that does concern an issue of public or general interest has no recourse unless he can meet the rigorous requirements of New York Times. This is true despite the factors that distinguish the state interest in compensating private individuals from the analogous interest involved in the context of public persons. On the other hand, a publisher or broadcaster of a defamatory error which a court deems unrelated to cm issue of public or general interest may be held liable in damages even if it took every reasonable precaution to ensure the accuracy of its assertions.” (Emphasis supplied.)
Gertz preserves for a private person, who is involuntarily involved in a matter of public interest or concern, his action for defamation; whereas, a private person who is voluntarily involved as a participant in a matter of public interest or concern is still subject to the New York Times standards.
In the case at bar, young Gary Jones was a voluntary participant in a matter of public interest and concern which found its way, after complaint and investigation, to the Gates Police blotter, as a matter of public record. It matters not that a “ crime ” was perhaps not involved, or at least no Family Court proceedings have been commenced, although the incident occurred two years ago.
The column “ Gates Police News ” contains items reported to the police of which official records are kept. They are, I hold, of public interest and afford the protection of the New York Times standard, and none of the papers on the motion demonstrate evidence of “ actual malice ”.
Insofar as this case is concerned, I hold that Gertz (supra) has not changed the law since my opinion in Vinci v. Gannett Co. (71 Misc 2d 146).
Defendant’s motion for summary judgment is granted, and plaintiffs’ cross motion to dismiss the affirmative defense is denied.